STATE OF NORTH DAKOTA EX REL. WILLIAM LANGER, Attorney General, Carl R. Kositzky, State Auditor, and Rachel L. Morris, Relators, Plaintiffs, v. OBERT A. OLSON, State Treasurer, Defendant.

(176 N. W. 528.)

**Statutes — legislative power vested in legislative assembly and in the people.**

1. The "legislative power," pursuant to the Constitution (arts. 26, 27), is vested in the legislative assembly, and in the people through the initiative and referendum.

**Statutes — exercise of legislative power.**

2. This legislative power, pursuant to the Constitution, may be exercised at a session of the legislative assembly or by the people at the polls through the initiative and referendum.

**A "special session" is a "session" of the legislative assembly.**

3. A "special session" of the legislative assembly, pursuant to the Constitution (§ 55, art. 2), is a "session" of the legislative assembly.

**Statutes — special session acts subject to power of people.**

4. A special session of the legislative assembly is governed by the constitutional provisions (art. 27) prescribing the time when acts of a legislative assembly shall become operative as laws, and is subject to the "legislative power" of the people (Const. art. 26), reserved in the initiative and referendum, in the same manner as a regular session of the legislative assembly.

**Statutes — time when acts take effect.**

5. An act of a legislative assembly, consonant with the Constitution, becomes effective as a law, as follows:

(1) Immediately upon its passage and approval by the governor, when stated and adopted by the legislative assembly as an emergency by the two-thirds affirmative vote required by the Constitution.

(2) On July 1st, following the close of the session, unless made subject to a referendum to the people, whereupon, by an affirmative majority of the electors, it becomes a law, and effective as such, thirty days after such election unless otherwise specified in the act.

(3) On a date, prescribed in the act, or otherwise, by the legislative assembly, subsequent to the constitutional date of July 1st.

**Statutes — when acts passed at special session 1919 take effect.**

6. The acts of the special session of the legislative assembly of 1919 are subject to the provisions of the Constitution, prescribing when acts of a legislative assembly become effective (art. 27) and, to the "legislative power" of the people reserved in the initiative and referendum (art. 26). The acts adopted at such special session, not as emergency measures, S. B. No. 40 changing the composition of the state auditing board, and H. B. No. 44, altering and reducing the state budget, do not become operative as laws until July 1, 1920, unless made subject to a referendum to the people, and sooner ratified by the people at an election, pursuant to the Constitution.

**Statutes — effect of emergency measure not constitutionally adopted.**

7. The act, H. B. No. 60, which provides that all acts passed at a special session not emergency measures, shall be operative as laws, within ten days after the close of such special session, and which was adopted by such special session not as an emergency measure, pursuant to the constitutional provisions, is not effective as a law either until July 1st next, or, unless sooner ratified by the people, pursuant to such constitutional provisions, and therefore does not apply to the time when S. B. No. 40 and H. B. No. 44 become operative as laws.

Opinion filed January 16, 1920.

Original Petition for Mandamus to compel the state treasurer to pay a state warrant to a special clerk in the office of the State Auditor. Writ granted forthwith.

*William Langer,* Attorney General, *Edward B. Cox,* and *Albert E. Sheets, Jr.,* Assistant Attorneys General, for plaintiffs.

The words "no" or "any" when used for the purpose of classification are all inclusive or exclusive. Cooper v. Utah, 35 Utah, 570, 136 Am. St. Rep. 1075, 102 Pac. 202; American Surety Co. v. Bernstein, 101 Tex. 189, 105 S. W. 990; Hershiser v. Ward, 29 Nev. 228, 87 Pac. 171; City v. Cincinnati R. Co. 144 Ky. 646, 139 S. W. 858; Platt

v. Payette, 19 Idaho, 470, 114 Pac. 25; 1 Words & Phrases, 2d Series, p. 216, under the word "any;" Com. v. Frederick, 119 Mass. 199.

Where the court provides either expressly or by implication that acts of the legislative department shall not become effective until a certain time has elapsed so as to give the people an opportunity to review such act tending in any degree to cut off this reserved right is a violation of the Constitution. State v. Meate, — Wash. —, 147 Pac. 11; Statutes, Cent. Dig. 330; Dec. Dig. 248.

While the established procedure adopted by one succeeding body after another for many years oftentimes controls with the courts in their decisions, nevertheless, "legislative interpretation of old laws has no judicial force." Frey v. Meichie, 68 Mich. 323, 38 N. W. 184; see also Statutes, Cent. Dig. 298; Dec. Dig. 220.

*William Lemke, Foster & Baker,* and *Joseph Coghlan,* for defendant.

"A presumption in favor of the constitutionality is raised by the mere fact of the enactment of a statute by the legislature; and the burden of showing that it is unconstitutional is on the party asserting it." 12 C. J. 791, 794, §§ 221, 222.

"It is an established rule of construction that, when a Constitution confers a power or enjoins a duty, it also confers, by implication, all powers that are necessary for the exercise of the one or for the performance of the other." 12 C. J. 719, citing cases in note 26.

"It is regarded as a safe rule to look to the nature and objects of the particular powers, duties and rights with all the lights and aids of contemporary history, and give to the words of each just such operation and force consistent with their legislative meaning as may fairly secure and attain the ends proposed." 12 C. J. 719, note 26 f; Prigg v. Pennsylvania, 16 Pet. 539, 10 L. ed. 1060; State v. Glenn, 18 Nev. 34, 42, 1 Pac. 86; Story, U. S. Const. § 405a.

"Merely technical rules of the construction are not to be applied so as to defeat the principles of the government or the objects of its establishment." 12 C. J. 699, § 42 and note 73, p. 700.

"The legislature needs no specific constitutional authorization for its enactments, as all the legislative authority of the state which is not

denied to the legislature by the Constitution of the state resides in that body." 12 C. J. 702, § 44, 749, notes 17 and 18.

"When no time for the going into effect of a statute is fixed by the statute itself, and there is no constitutional or general statutory provision governing the matter, it becomes effective on the day of its passage and needs no promulgation to give it operation." 25 R. C. L. 797, citing Mathews v. Zane, 7 Wheat. 164, 5 L. ed. 425.

"Independent of any constitutional provision, a statute duly made takes effect from its date, when no time is fixed, and this rule is fixed beyond the power of judicial control." Parkinson v. State, 14 Md. 184, 200.

"A statute, when duly made, takes effect from its date when no time is fixed and this is now the settled rule." 1 Kent, Com. 7th ed. *454.

House Bill No. 60 interprets the Constitution, and the legislative interpretation should be followed by the court. Gantt v. Brown, 224 Mo. 271, 149 S. W. 644, Ann. Cas. 1913D, 1283; Fargo v. Powers, 220 Fed. 697; Coyle v. Smith, 28 Okla. 121, 113 Pac. 945; Smith v. Auditor General, 165 Mich. 140, 139 N. W. 557.

BRONSON, J. This is an application for the exercise of the original jurisdiction of this court to compel the state treasurer to make payment of a state warrant to the relator Morris, for her salary, as a special clerk, in the office of the state auditor, from December 19th, 1919, to December 31st, 1919.

Among the issues presented, the prime question involved is the validity of S. B. No. 40 and H. B. No. 44, adopted by the special session of the legislative assembly of 1919, as present operative laws, pursuant to the provisions of H. B. No. 60, also enacted by such special session, which makes operative such acts ten days after the close of the session.

The relator Morris is a special clerk in the office of the state auditor. She has presented a warrant issued by the state auditor for her salary as such clerk from December 20 to December 31, 1919. The state treasurer has refused payment. The warrant was issued upon a voucher for her salary, payable out of the contingent fund of the state auditor, such voucher being approved by the state auditor and the state auditing board as composed pursuant to § 375, Comp. Laws 1913. The special session of the legislative assembly held from November 25,

1919, to December 11, 1919, passed acts which affect the composition of such state auditing board and the contingent fund of such state auditor.

S. B. No. 40, enacted by this special session, amends said § 375, Comp. Laws 1913, by removing from the state auditing board the state auditor and the secretary of state, and substituting instead the commissioner of agriculture and labor, and the state bank examiner.

H. B. No. 44 amends the Budget Act (Laws 1919, chap. 16), by making large and substantial reductions in the amounts of the appropriations for various departments and, in particular, eliminating the contingent fund of the state auditor, out of which the salary warrant involved is payable.

Measures were enacted which changed the composition of the emergency commission (H. B. No. 13), the composition of the state equalization board (S. B. No. 26), reduced the number of assistants to the attorney general (S. B. 4 & 13), and transferred the licensing and inspection of pool halls and theaters, etc. (H. B. No. 7), from the department of the attorney general to the state sheriff.

In all, this special session enacted some seventy-two measures; thirty-three of these were emergency measures, enacted as such pursuant to the constitutional provisions requiring for each a two-thirds affirmative vote of both branches of the legislative assembly; thirty-nine of such measures did not receive such two-thirds vote, and were enacted by a majority vote. Among these measures so receiving a majority vote are S. B. No. 40, H. B. No. 44, H. B. No. 60 and the measures affecting the department of the attorney general.

H. B. No. 60 reads as follows:

"An act declaring and defining the time within which laws passed at any special session of the legislative assembly shall take effect.

"Whereas, the Constitution of this state fails to define time within which laws enacted at any special session shall take effect, and

"Whereas, there should be some definite and certain time when such laws take effect, therefore

"Be it enacted by the Legislative Assembly of the State of North Dakota

"All acts of any special legislative assembly of the state of North

Dakota shall take effect within ten days after the close of any such special session, unless the legislature by a vote of two thirds of the members present and voting in each house shall declare it to be an emergency measure, in which event it shall take effect and be in force from and after its passage and approval by the governor."

In the senate, this bill was approved by a vote of twenty-nine ayes and twelve nays; in the house, by a vote of sixty-six ayes and forty-one nays. It was approved by the governor on December 11, 1919.

This act, H. B. No. 60, affecting the measures as above stated has created uncertainty and doubt as to the composition and powers of certain existing boards, the existence of the contingent fund, involved, and also salaries, the auditing of accounts, and the prerogatives and functions of state officials.

The issues present squarely a question for the exercise of the original jurisdiction of this court, involving the prerogatives and functions of state officials. If H. B. No. 60 is a present operative statutory enactment, which affects acts, not emergency measures, adopted by this special session, clearly the salary warrant involved herein should not be paid both by reason of want of auditing by a proper state auditing board, and also by want of a fund out of which payment may be made; for by the terms of H. B. No. 60, if operative as a law, all the acts of such session, not emergency acts, became effective as laws, commencing on December 22, 1919.

On December 20, 1919, there was filed with the secretary of state, referendum petitions upon said H. B. No. 60, which the secretary of state has certified are sufficiently signed by some 15,000 electors of the state for referendum to the people of such act under the constitutional amendment (art. 26), provided therefor.

The relators contend that H. B. No. 60, without determining the constitutionality of this provision, is, in any event, subject to the referendum filed and therefore is suspended; that the act is unconstitutional because in contravention of the constitutional provision, § 67 as amended, providing the time when acts of the legislature, not emergency measures, shall become effective; and, furthermore, that said H. B. No. 60 is unconstitutional because violative of § 61 of the Constitution which provides that no bill shall cover more than one subject.

The respondent contends that, as applied to a special session of the legislative assembly, there exists no constitutional provision applicable concerning the time when the acts involved become operative; that § 67 of the Constitution as amended does not apply to a special session of the legislative assembly; that H. B. No. 60 covers one subject, namely, the time when acts of a special session become effective; that even though H. B. No. 60 be deemed subject to the referendum petitions filed, and therefore suspended (which is not admitted), the constitutional provisions concerning time not being applicable to a special session, the acts involved and which the relators contend are not effective as laws, became effective as laws immediately upon their passage and approval.

The contention of the relators, without a consideration of the constitutionality of the subject-matter of H. B. No. 60, is that this act is neither stated to be in terms nor has it been adopted as an emergency measure; that, therefore, it is subject to the provisions of the constitutional amendment granting the right to referend and suspend measures not adopted as emergency measures by a legislative assembly; that referendum petitions have been filed which are sufficient to so suspend such act until voted upon by the people. Plainly, this contention, even though it be recognized as tenable, and, further, that proper referendum petitions have been filed so as to suspend such act, does not avail the relators in any manner in support of the writ sought herein.

If, for any reason, or upon the theory advocated by the respondents, the subject-matter of H. B. No. 60 is constitutional, and the constitutional provision concerning when acts of the legislature are operative as laws, does not apply to a special session of the legislature, then there exists no law, constitutional or statutory, fixing the time when acts of a special session become laws. The general rule of law then obtains, not denied by the parties, namely, that statutory enactments, in the absence of constitutional or statutory provision, take effect upon their passage and approval.

The main acts involved herein are H. B. No. 44 and S. B. No. 40 relating respectively to the new state auditing board and the contingent fund involved. H. B. No. 60 is concerned with the rights of the relators only as its subject-matter pretends to make operative said S. D.

No. 40 and H. B. No. 44 as laws. If H. B. No. 60 is suspended and referred and the constitutional provision quoted does not apply to a special session, such acts are now - operative as laws, and concededly relators cause of action fails.

It results, therefore, that the principal question before this court is whether in fact, the constitutional provisions, providing a time when the acts of a legislative assembly become effective, apply to a special session of the legislature.

It is not denied by the parties that if the constitutional provisions invoked do not apply to a special session of the legislative assembly, the act is a valid statutory enactment; that, on the contrary, if such constitutional provisions do apply, the act in question is unconstitutional.

In determining this prime and decisive question it is necessary to briefly consider the constitutional provisions invoked and such other constitutional provisions, legislative enactments, or interpretations, together with judicial decisions which may serve to throw light upon the determination of this question.

The original constitution of this state was submitted to and adopted by the people on October 1, 1889, and, at the same time, state officers were elected. The state was admitted into the Union by presidential proclamation on November 2, 1889.

In this Constitution (art. 2, § 67) it is provided: "No act of the legislative assembly shall take effect until July 1st, after the close of the session, unless in case of emergency (which shall be expressed in the preamble or body of the act), the legislative assembly shall by a vote of two thirds of all of the members present in each house otherwise direct."

In this Constitution it is also provided that the governor upon assuming the duties of his office shall issue his proclamation convening the legislative assembly of the state. Sched. § 17. That all laws now in force in the territory of Dakota, not repugnant to this Constitution, shall remain in force until they expire by their own limitations, or be altered or repealed. Sched. § 2.

Accordingly the first session of the legislative assembly of this state, by the governor's proclamation, was convened and met on November 19, 1889. It thereupon proceeded to elect United States Senators and

to enact statutory acts for the state. This session concluded on March 18, 1890.

In reviewing the acts enacted by this first session, it is apparent that this legislature conformed with the constitutional provisions concerning the time when its acts should become operative as laws. This legislature enacted acts prior to the month of January, 1890. Many emergency measures were passed at this session. In many of such acts it is particularly recited that it is necessary for the act to take effect before July 1st, following. Laws 1890, chap. 145, 146, 169, 170, 185, 197.

At this time there was also existing a territorial act that all laws enacted by the legislative assembly, unless otherwise expressly provided therein, should be in force and effect on the 1st day of July after their passage and approval. Terr. Laws 1889, chap. 3. This provision was held not to be repugnant to the constitutional provisions in Re Hendricks, 5 N. D. 114, 121, 64 N. W. 110.

Was the session of 1889–90 a special or extraordinary session, or a regular session?

In State ex rel. Larabee v. Barnes, 3 N. D. 319, 55 N. W. 883, the question was raised concerning the constitutionality of certain legislation enacted at this first session. It was contended that this session, convened before the regular time of a regular session, and prior to the commencement of a legislative term, as constitutionally prescribed for the legislators elect, contravened the constitutional provisions (§ 41, art. 2) which provided that such term of the legislative members should commence on the first Tuesday of January after their election, and (§ 53, art. 2) which provided that the legislative assembly should meet on the first Tuesday after the first Monday in January, in the year following the election of its members.

It was held that these constitutional provisions did not apply to this first session; that it applied only to subsequent legislatures, whose members were elected in the regular manner.

Nevertheless, this first session, convened by the governor's proclamation, at a time anterior to the regular session provided in the Constitution, conformed to the constitutional provisions concerning the time when its acts should become effective as laws.

In Re Hendricks, supra, the constitutional provisions (§ 67) were considered. The question arose concerning the time when the 1895 Revised Codes of this state went into effect; the legislature of 1893 (Laws 1893, chap. 74) provided for the revision and codification of the laws, and that the Revised Codes, when compiled, should take effect and be in force thirty days after the proclamation of the Governor announcing the delivery and his acceptance of the Codes delivered. The proposed Revised Codes also covered measures to be enacted by the subsequent or succeeding legislative assembly. In 1895, the legislative assembly passed acts, some with emergency clauses, and some without emergency clauses. It was held competent for the legislature to constitutionally prescribe a date subsequent to July 1st, succeeding their passage, when anticipated laws should take effect. That emergency clauses of the 1895 legislature, however, became effective upon passage and approval.

In the original Constitution, § 25, art. 2, provides: "The legislative power shall be vested in a senate and a house of representatives."

In November, 1914, this § 25 was amended by a constitutional amendment, submitted to and ratified by the people, which provides that the legislative authority shall be vested in the legislative assembly consisting of a senate and a house of representatives, but that the people reserved to themselves the power to propose laws, etc., and the power to approve or reject at the polls any act, item, or section or part of any act or measure, passed by the legislative assembly. In such amendment, provision was made for referring any act by filing referendum petitions therefor. It was further expressly provided in this amendment that, when necessary for the immediate preservation of the public peace, health, or safety, a law should become effective without delay, such necessity, and the facts creating the same, should be stated in one section of the bill, and if, upon an aye and nay vote in each house, two thirds of all the members elected to each house should vote, on a separate roll call, in favor of the said law going into instant operation, such law should thereupon become operative upon approval by the governor (art. 15, Amend. Const.). This amendment came into question before this court in the case of State ex rel. Langer v. Crawford, 36 N. D. 385, 162 N. W. 710, Ann. Cas. 1917E, 955, where the

question concerning the Board of Regents Act (Laws 1915, chap. 237) was presented, among other questions, when such act became effective. This act had been adopted by an emergency provision pursuant to § 67, Const. but not pursuant to the emergency provision contained in said art. 15 (§ 25 amended). Two members of this court held that the emergency measure could be made effective as a law under § 67, Const. Two other members of this court held that an emergency measure to be made effective must be pursuant to said art. 15.

On November 5, 1918, § 67 of the original Constitution was amended by a constitutional amendment submitted to and ratified by the people. Const. art. 27 Amend. The amendment reads as follows:—

"No act of the legislative assembly shall take effect until July 1st after the close of the session, unless the legislature by a vote of two thirds of the members present and voting, in each house, shall declare it an emergency measure, which declaration shall be set forth in the act, *provided,* however, that no act granting a franchise or special privilege, or act creating any vested right or interest other than in the state, shall be declared an emergency measure. An emergency measure shall take effect and be in force from and after its passage and approval by the governor."

At the same time, said art. 15 (Amendment of said § 25), was again amended by constitutional amendment submitted to and ratified by the people.

The provision mentioned in said art. 15, concerning the method of adopting an emergency measure by the legislative assembly was eliminated in this amended article. Art. 26. It was transplanted in an amended form to the amendment of said § 25, art. 27. Among the provisions of this amendment there may be stated the following (for purposes of consideration, some words or phrases have been underscored by the court):

"The *legislative power* of this state shall be vested in a *legislature* consisting of a senate and a house of representatives. The people, however, reserve the power, first, to propose measures and to enact or reject the same at the polls; second, to approve or reject at the polls *any measure* or any item, section, part or parts of, any measure enacted by the *legislature.*

"The second power reserved is the referendum. Seven thousand electors at large may, by referendum petition, suspend the operation of *any measure* enacted by the *legislature,* except *an emergency measure.* But the filing of a referendum petition against one or more items, sections or parts of any measure, shall not prevent the remainder from going into effect. Such petition shall be filed with the secretary of state not later than ninety days after the adjournment of the session of the legislature at which such measure was enacted.

"Any measure, except an emergency measure, submitted to the electors of the state, shall become a law when approved by a majority of the votes cast thereon. And such law shall go into effect on the 30th day after the election, unless otherwise specified in the measure.

"If a referendum petition is filed against an emergency petition such measure shall be a law until voted upon by the electors. And if it is then rejected by a majority of the votes cast thereon, it shall be thereby repealed.

"The word *'measure'* as used herein shall include any law or amend-ment thereto, resolution, *legislative proposal,* or *enactment* of *any character.*

"This section shall be self-executing and all of its provisions shall be treated as mandatory. Laws may be enacted to facilitate its operation, but *no laws* shall be enacted to *hamper, restrict, or impair* the exercise of the rights reserved to the people."

Said arts. 26 and 27 are now a part of the Constitution. State ex rel. Byerly v. State Canvassers, ante, 126, 172 N. W. 80.

In 1892 a special session of the legislative assembly was held from June 1st, to June 3d, inclusive; seven acts were adopted. No attempt was made to prescribe a different date when such acts should become laws than that prescribed by the Constitution.

In 1918 again a special session of the legislature was held from January 23d, to January 29th; twelve acts were passed. All of these acts were enacted with emergency clauses approved by a two-thirds affirmative vote of the members of each house, upon a separate roll call, in accordance with the constitutional provisions concerning emergency clauses then existing. In the recent special session involved herein, it is clear that, with the exception of H. B. No. 60, no attempt was

44 N. D.—40.

made by this special session to enact measures other than in conformity with the constitutional provision concerning emergency measures or when acts otherwise should become effective.

Thus far it is evident, that there exists, through a constitutional provision, legislative actions or construction, on judicial interpretation, concerning the time when statutory enactments become effective as laws, three, or possibly four, methods.

(1) By an emergency clause to make the act effective as a law upon passage and approval by the necessary two-thirds affirmative vote required by the constitutional provision.

(2) By permitting an act not stated or adopted as an emergency act to become effective July 1st, after the close of the session, pursuant to the constitutional provision.

(3) By a specific provision in the act providing that such acts shall become effective as a law at a time subsequent to July 1st, after the close of the session.

(4) Possibly by the referendum of an act not an emergency measure to the people, and through adoption of the same at an election, whereupon pursuant to the Constitution, concerning the referendum (art. 27), such act becomes effective as a law thirty days after such election.

The third method was adopted by the legislative assembly of 1913, when it provided, in the act, that the same should go into effect on January 1, 1914. Laws 1913, chap. 194.

The pertinent question now is, "Do these constitutional methods and constitutional provisions quoted apply to a special session of the legislature?" "Do they apply to S. B. No. 40 and H. B. No. 44 and, particularly, to H. B. No. 60 which, by its terms, makes the former acts effective as laws within ten days after the close of the special session?"

No question is raised, and no contention is made, that such constitutional provisions do not apply to a regular session of the legislature. There is, likewise, no contention that a regular session, by resolution or enactment, may contravene these constitutional provisions. These propositions stand admitted.

If the constitutional provisions quoted apply to a special session, S. B. No. 40 and H. B. No. 44 do not become effective as laws until July 1st, next. This is evident.

If they do not apply to a special session, then S. B. No. 40 and H. B. No. 44 became laws upon their passage and approval, unless, by the ten days' period mentioned in such act, their effect as laws has been postponed. If H. B. No. 60 has been suspended by the referendum, S. B. No. 40 and H. B. No. 44 are now effective as laws. In either event, relator's cause fails.

For it is a general rule, not denied by the parties, that statutory enactments take effect upon their passage and approval, unless there be constitutional or statutory provisions to the contrary. Sutherland, Stat. Constr. § 104; 36 Cyc. 1196.

H. B. No. 60, therefore, demands consideration only to the extent that it affects S. B. No. 40 and H. B. No. 44, concerning the time of their operation, and to that extent involves herein possibly the question of salary in the interval of time.

What is the *legislative power?* In whom is it vested? How may it be *exercised?* These questions are answered in the Constitution of this state directly and explicitly. In constitutional construction, it is elemental to state that constitutional provisions are to be construed so as to give effect to every part and portion of a constitution as a harmonious whole where possible. 8 Cyc. 730; State ex rel. Collins v. Jackson, 119 Miss. 727, 81 So. 7.

The Constitution states that the legislative power is vested in a legislature, with the right of initiative and referendum to the people reserved. Art. 27. The term "legislature" is synonymous with "legislative assembly." § 52.

It will be noted that this power is possessed not alone by the legislature, but also by the reserved powers of the people through the initiative and referendum.

This legislative power so vested is all the power resident in the legislative department of a sovereign government in our tripartite form of government.

The legislative assembly composed of a senate and house of representatives (§ 52), exercise as such the legislative powers at session, subject to the constitutional provisions therefor.

These sessions are biennial, except as otherwise provided in the Constitution. § 55.

It is otherwise provided in the Constitution for the first session being convened by the governor and for the power to convene the legislative assembly on extraordinary occasions.  § 75.

Can there be any question that the legislature which met in *special session* in 1919 was a *legislative assembly?*  Can it be doubted that such *session* was not a *session* of the *legislative assembly?*  Is there any room for construction or argument that, under the Constitution, the same members of the house and the senate might one day be sitting in regular session bound by the constitutional provisions, requiring a two-thirds vote in order to enact an emergency measure, and that acts not so passed should not become effective until July 1st, and that several days later, after adjournment and reconvenement by the governor, this same legislature composed of exactly the same members, sitting in special session, would have the power to enact statutory enactments, irrespective of the constitutional provisions, and in disregard of the legislative power reserved to the people in the initiative and referendum?

Section 67 of the Constitution as amended by its direct and explicit language, which provides that no act of the legislative assembly shall take effect until July 1st, after the close of the session.  This is general and inclusive language.  There ought to be no question concerning its application to a legislative session whether in regular or special session.  The contention is made that in § 67 the statement "after the close of *the* session" was particular in referring to a regular session, but in the same article reference is made in §§ 55 and 56 to all sessions of a legislative assembly—the biennial sessions and those otherwise provided in the Constitution.

In People ex rel. Carter v. Rice, 135 N. Y. 473, 16 L.R.A. 836, 31 N. E. 923, the point was made that an extraordinary session was not such a session as was contemplated by the Constitution.  It was held than an extraordinary session is nevertheless a session of the legislature.  That the governor by the terms of the Constitution has the power to convene the legislature on extraordinary occasions, and that when convened the legislature was in session.

No distinction in the Constitution can be found in terms between the powers and duties of a regular and a special session of the legisla-

tive assembly. The powers, duties, and restrictions upon a legislative assembly are all found in the same article of the Constitution. From statehood they have all been followed as applicable. If it be possible for the special session to ignore the provisions of § 67 of the Constitution amended (art. 27) it is possible for it to disregard the entire article which further provides that no act of the legislature, granting a franchise or special privilege, or act creating any vested right or interest other than in the state, shall be declared an emergency measure. If it may disregard the constitutional provisions of said § 67, upon parity of reasoning, the special session may likewise disregard the constitutional provisions mentioned in § 69 of the same article, which provides that the legislative assembly shall not pass certain local or special laws.

In November 1918, art. 27 (§ 67 as amended), and art. 26 were ratified by the people as amendments to the Constitution. There can be no question that these two articles specifically reserve the power to the people upon all acts of any description for initiative or referendum purposes. The power reserved to the people in art. 26 to approve or reject any measure enacted by the legislative assembly not an emergency measure, not only specifically includes all enactments that any legislature may pass, but it distinctly connects up art. 27 (§ 67) which defines emergency measures, with art. 26 covering the initiative and referendum. Furthermore the very term contained in art. 26 that the word "measure" shall include any law or legislative proposal of any character, and, further, that no laws shall be enacted to hamper legislation or impair the exercise of the rights reserved by the people, indisputably show the reservation of legislative power to the people upon all acts or measures of a legislature in uncertain terms.

True it is that every reasonable presumption must be drawn in favor of the validity and constitutionality of legislative enactments. The solemn acts of a legislative assembly should not be overturned upon light considerations. This is indeed emphasized by the constitutional policy expressed in this state by the amendment to our Constitution which requires four members of this court to assent to the declaration of the unconstitutionality of a statutory enactment. The Constitution, however, is the supreme law of this land. Its provisions are equally

obligatory upon the court, and upon the legislature. It is the duty of this court to uphold the Constitution in its plain words and meaning, so long as this court has imposed upon it the sworn duty to uphold the Constitution. In this Constitution the people of the state have placed restrictions and checks upon the exercise of legislative powers. In it the people of this state have reserved to themselves the right to approve or reject legislative powers exercised by the legislative assembly. The plain mandates of the Constitution must be followed. When the legislative branch transcends or violates such constitutional mandates, the court, following its sworn duty, can do nought else than so declare. Following its sworn duty concerning the inviolability of constitutional provisions, rules of expediency, or of impropriety concerning constitutional provisions, have no application. Neither may public clamour, majority desire, present apparent need, if any, unreasonableness of constitutional provisions as particularly applied, influence or swerve the court in following its sworn duty. The constitutional provisions involved clearly apply to a special session of the legislature. Under such constitutional provisions, S. B. No. 40 and H. B. No. 44 have not yet become operative as laws.

Likewise, H. B. No. 60, being subject to the constitutional provisions mentioned, and not being adopted by the requisite vote constitutionally required concerning emergency measures, does not become operative as a law, until July 1st, next, or until sooner ratified by the people, pursuant to such constitutional provisions. It therefor does not apply to the time when S. B. No. 40 and H. B. No. 44 become operative as laws.

The determination of these constitutional questions, necessarily affords to the relators the relief demanded. No issues have been raised and this court does not express any opinion upon what salaries or disbursements may be made out of the contingent fund, involved, or, upon the retrospective effect, if any, of the acts of the special session, when the same do become operative.

The writ demanded should issue forthwith.

BIRDZELL, J. This is a petition for a writ of mandamus directed to the state treasurer to compel him to pay a warrant of $40 previously

issued to one of the relators in payment of salary earned by her as special clerk between the dates of December 20 and December 31, 1919. A fund, known as the state auditor's contingent fund, was previously appropriated by the legislature in § 2 of chapter 16 of the Session Laws of 1919 and the warrant in question was drawn so as to be payable out of that fund. Payment is refused by the defendant on the ground that an amended budget contained in House Bill 44, which was enacted at a special session of the legislature in November and December, 1919, repeals the previous appropriation of the auditor's contingent fund. There is no contention made here that House Bill 44 of the special session does not repeal the appropriation previously made by the regular session, but it is contended by the relators that the repeal does not take effect until July 1st, 1920.

The ultimate question for decision is whether or not the appropriation for the contingent fund, upon which the warrant in question was drawn, was an appropriation legally existing and available for the payment of services of a special clerk from December 20 to December 31, 1919. House Bill 44 of the special session, which for brevity may be referred to as the amended budget, was passed without receiving a two-thirds vote on the emergency feature, which, according to the title, had been declared in the bill, and it was approved at 11:30 A. M. December 13, 1919. The special session of the legislature had adjourned previous to the approval of this bill at 12 o'clock noon on the 11th day of December, 1919.

Section 67 of the Constitution, in so far as it may be applicable provides: "No act of the legislative assembly shall take effect until July first after the close of the session, unless the legislature by a vote of two thirds of the members present and voting, in each house, shall declare it an emergency measure, which declaration shall be set forth in the act."

It is clear, and no contrary contention is made, that if the foregoing section is applicable, the amended budget would not take effect until July 1, 1920. It is equally clear, according to elementary rules governing the taking effect of legislative enactments, that, if § 67 of the Constitution does not apply, and in the absence of other legislation affecting

the question, the amended budget would take effect immediately upon its approval.

It is contended both that § 67 of the Constitution is not applicable to acts passed at a special session of the legislature and that there is other legislation controlling the date at which the amended budget may take effect. House Bill 60, which was approved at 7:10 p. m. December 11, 1919, is referred to as controlling. This bill was likewise passed without receiving a two-thirds vote. It provides that all acts of any special legislative assembly shall take effect within ten days after the close of any special session, "unless the legislature by a vote of two thirds of the members present and voting in each house shall declare it to be an emergency measure, in which event it shall take effect and be in force from and after its passage and approval by the governor."

If the contention of the defendant with respect to the nonapplicability of § 67 of the Constitution be correct, it is obvious that the amended budget was in effect from and after 11:30 a. m. December 13th, 1919, unless by virtue of House Bill 60 it was postponed until the expiration of ten days after the adjournment of the session. The session adjourned, according to the journals, at 12 o'clock noon, on December 11, 1919. The question, so far as it is affected by House Bill 60, is further complicated by the fact that a referendum petition has been filed with the secretary of state which purports to suspend the operation of the bill.

From the foregoing statement it will be seen that if neither § 67 of the Constitution nor House Bill 60 controls the time of the taking effect of the amendment budget, it was in operation during all of the time the salary in question was earned. Also that if House Bill 60 controls, the amended budget was in effect from December 21st, and hence for the period of ten of the eleven days during which the salary was earned. The important question, therefore, and it seems to us to be the single question that should be decided, is whether or not § 67 of the Constitution controls the date at which acts passed at a special session of the legislative assembly shall take effect. If it does control, the legislature has no power to prescribe a different date. In fact, it has not attempted to prescribe a different date except upon the sup-

position that § 67 was not controlling, for in the preamble to the enacting clause of House Bill 60 it is stated: "Whereas the Constitution of the state fails to define the time at which laws enacted at a special session shall take effect, etc."

In our opinion it is necessary to consider but one question and that is the meaning and effect of § 67 of the Constitution. To us it seems clear that it applies to all laws passed by the legislature, whether in regular or special session. In that part of the section which refers to the time when legislation shall take effect, the date is fixed at "July 1st after the close of the session, unless the legislature, by a two-thirds vote of the members present and voting, in each house, shall declare it an emergency measure." The term "session" is here used in a generic sense and would include either a regular or a special session. This language, as employed in article 27 of the amendments, is exactly the same as that originally found in § 67 of the Constitution. In the article devoted to the "legislative department" reference is made to various "sessions" of the legislative assembly. In § 56 there is a limitation as to the length of the "regular session" and in the same section there is a longer limitation prescribed for the "first session." In § 31 the time of electing a president *pro tempore* of the senate is fixed as being at the beginning of each "regular session" and in § 35 the time of providing for the legislative apportionment is fixed as being at the "first regular session" after each census enumeration, with additional power given to reapportion "at any regular session." It is thus clear that throughout the article dealing with the legislative department, the constitutional convention distinguished wherever it was thought necessary between the regular session, a session specially provided for as the first session, and any other session in which the legislature may be convened; while in § 67, when fixing the time for the taking effect of the acts of the assembly, it only used the expression "the session." If it were intended that all acts passed at a special session should be deemed emergency measures, it is difficult to see why such pains would be taken to differentiate between regular and special sessions in other particulars and so important a matter as this left to bear inference. Our conclusion is that it was not left to inference at all but rather that § 67 was intended to apply to all legislation, regard-

less of when passed. Reference to the legislative practice from state-
hood indicates that this section has always heretofore been considered
applicable to legislation passed at other than regular sessions.

Any other construction than the one we have adopted would render
the Constitution inharmonious in other respects. Article 26 of the
amendments, which provides for the initiative and referendum, re-
serves to the people legislative power previously vested exclusively in
the legislature by § 25 of the original Constitution. Under this amend-
ment power is reserved "to approve or reject at the polls any measure
or item, section, part or parts of any measure enacted by the legis-
lature," and special provision is made for referring emergency meas-
ures to popular vote. An emergency measure is not suspended by the
filing of a referendum petition but is repealed in case it is rejected at
the polls. This article, for purposes of referendum, nowhere recog-
nizes two classes of emergency legislation, nor does it purport to deal
separately with any legislation passed at a special session of the
legislature. There is no doubt in our minds that the emergency legis-
lation, upon which the special provisions concerning the referendum
operate, is that which carries the two-thirds vote of the members pres-
ent and voting within § 67 of the Constitution as amended, and that
there is no other class of emergency legislation. Under the defendant's
view, every act passed at a special session would be an emergency act
regardless of the vote received, and this, no matter how foreign to the
subject or subjects embraced in the proclamation.

It is argued that, since it is only upon extraordinary occasions
that the governor has the power to convene the legislative assembly, it
was intended that the enactments of a majority of that body in special
session should have immediate effect, particularly if a majority so
determine. The unsoundness of this argument seems to us to be quite
apparent. The governor is the sole judge of the existence of an extra-
ordinary occasion, but, except through the exercise of his constitutional
control over legislation as such, he does not control the exercise of the
legislative function. And this is true, even in those states where the
governor has power to limit the matters that may be considered at a
special session. See Re Governor's Proclamation, 19 Colo. 333,
35 Pac. 530; People ex rel. McGaffey v. District Ct. 23 Colo. 150, 46

Pac. 681; State v. Fair, 35 Wash. 127, 102 Am. St. Rep. 897, 76 Pac. 731. In short, the legislative assembly, when convened either in regular or special session, exercises its functions independently of the executive, and it not only has the right to differ with the executive as to the existence of an extraordinary occasion by passing no legislation, but it also has the right to pass such laws as, in its judgment, will meet the existing situation. If it does the latter, it may even differ with the executive as to when they shall take effect. If it were the intention to make the judgment of the executive as to the existence of an extraordinary occasion controlling as to the time the legislation enacted to meet it should take effect, it would seem that this judgment should prevail over that of a bare majority of the assembly. But in the instant case the majority has attempted to postpone the date ten days. If the majority could postpone the date ten days, it could likewise postpone it ten weeks or ten months. (It could doubtless do the last. In fact the independent power to legislate must imply the power to fix the date when an act shall become a law, provided it be not earlier than that limited in the Constitution, because the legislature must be free to say that its act shall take effect when stated or its members will reject the bill.) So this argument, when analyzed and applied to this case, is in reality inconsistent because it is advanced, not alone to support the contention that the chief executive, by proclamation, controls the time of taking effect of legislation, but that the executive, combined with a majority of the assembly, controls. Surely this element of legislative power does not thus pass a shuttlecock between the chief executive and the legislative assembly. It is clear to us that the matter was not left in so inconclusive a state by the constitutional convention, and that it is adequately covered by § 67. Under his section all laws go into effect on July 1st after enactment, or later if so stated; unless two thirds of the assembly present and voting agree upon an emergency that fixes an earlier date.

It follows that the writ should issue.

GRACE, J. (specially concurring in the opinion prepared by Justice Bronson).

This proceeding is one brought by the relators, to procure this court

to issue an original writ of mandamus, commanding the state treasurer to pay a certain warrant issued by the state auditor, and numbered A——221,195, presented to the defendant for payment, on the 2d day of January, 1920, and payment refused, on the ground that it is not authorized by the amended budget of the special session, which convened in November, 1919.

The 16th legislative assembly of North Dakota convened in regular session on the 7th day of January, 1919, and concluded its duties on or about the 1st day of March, 1919. It enacted chapter 16 of the Session Laws of 1919, which was denominated the general budget, and which was, by both houses, passed as an emergency measure and became effective immediately upon such passage, and its approval by the governor. Among other things, subdivision 7 thereof provided for a contingent fund of $35,000, to be used in complying with new laws.

On the 25th day of November, 1919, the Legislative Assembly of North Dakota convened in special session. By House Bill 44 it amended and re-enacted subdivisions of chapter 16 of the Session Laws of 1919, including subdivision 7 thereof, with the exception, that it repealed that part which provided for the said contingent fund of $35,000.

This bill received a majority of the votes of the members elected to each house; it did not receive an affirmative vote of two thirds of the members of each house present and voting thereon. In other words, the emergency clause was not attached to the bill upon its passage. It does not become effective and operative until July 1st, after its passage, unless House Bill No. 60 was effective, to place it in operation sooner; or unless every bill enacted as a special session is an emergency measure, whether enacted as such or not; or unless other provisions of the Constitution provide, under certain conditions, an earlier time thon July 1st, when a law becomes effective.

The material portion of House Bill No. 60 is as follows:

"All acts of an special legislative assembly of the state of North Dakota shall take effect within ten days after the close of any such special session, unless the legislature, by vote of two thirds of the members present and voting, in each house, shall declare it to be an emer-

gency measure, in which event it shall take effect and be in force from and after its passage and approval by the governor."

Section 67 of the Constitution, as amended, is as follows:

"No act of the legislative assembly shall take effect until July 1st, after the close of the session, unless the legislature by a vote of two thirds of the members present and voting, in each house, shall declare it an emergency measure, which declaration shall be set forth in the act, provided, however, that no act granting a franchise, or special privilege, or acts creating any vested right or interest other than in the state, shall be declared an emergency measure.

"An emergency measure shall take effect and be in force from and after its passage and approval by the governor."

At the special session, there were seventy-two bills passed, to thirty-nine of which there was no emergency clause attached, and they would not go into effect nutil July 1st, unless for one of the three clauses above stated.

The mere fact that a bill is passed at a special or extraordinary session does not constitute it an emergency measure. Such bill only becomes an emergency measure, and thus immediately effective after its passage and approval, if it has attached to it the emergency clause required by § 67, as amended, and is approved by the required two-thirds vote therein prescribed.

The fact that House Bill 44 was passed at a special session would not accelerate the time when it would become effective. The time when it would become effective would be July 1st, after its passage, it not having been passed with the emergency clause attached, and a two-thirds vote of the members of each house present and voting, but by only a majority vote of the members elected to each house. It would not, therefore, become effective until July 1st, unless House Bill No. 60 places it in effect within ten days after its passage and approval, as provided in that bill.

To hold that House Bill 60 could have this effect would result in rendering the provision in § 67, with reference to the emergency clause, largely nugatory. If we hold House Bill 60 is effective as to fixing the time when Bill 44 becomes effective, there would be no necessity of attaching the emergency clause to a bill, and voting thereon at the time

of its passage. That could all be deferred until the end of the session, and, then, with such a bill as 60, all measures passed, at that session, or such as were desired, could be declared emergency measures, and passed by a bill such as 60, by a mere majority of the members elected to both houses.

Thus, by such a bill, might all measures passed, at a given session, become emergency measures, though they receive not a two-thirds vote of the members of both houses present and voting, but only a majority, as above stated.

As we view the matter, this cannot be done, and House Bill 60 is not effective, to make House Bill 44 effective within ten days after its passage and approval, and, so far as House Bill 60 is concerned, House Bill 44 will not become effective until July 1st, it having been passed without an emergency clause attached, and without receiving the required two-thirds vote of the members of both houses present and voting.

On July 1st it will become effective as any other bill passed without an emergency clause attached.

A proper petition has been filed, and House Bill 60 has been referendumed under the provisions of § 25 of the Constitution, as amended. The bill not being an emergency one, and not having received the required two-thirds vote of both houses, it is suspended by the filing of the referendum petition. It will have to be voted upon at a state-wide election, or at a special election, if one should be called. If, at such election, it is approved by a majority of the votes, so far as time is concerned, and according to § 25 of the Constitution, as amended, it would go into effect 30 days after the election, unless otherwise specified in the measure.

This seems to be the only way in which a law may go into effect before July 1st, unless it is passed with an emergency clause attached, as required by § 67.

CHRISTIANSON, Ch. J. (concurring specially). Upon the oral argument it was frankly conceded, and the members of the court are all agreed, that if House Bill No. 60 had been enacted at a regular session of the legislative assembly it would unquestionably be invalid as violative of § 67 of the Constitution. But it is contended that § 67

applies only to laws enacted at a regular session, and has no application to laws enacted at a special session of the legislative essembly. The question presented in this case is whether this contention is sound. In opinions prepared by my associates Birdzell, Bronson and Grace it is held that § 67 applies to all legislative enactments—those enacted at a special as well as those enacted at a regular session. In the opinions prepared by Justice Birdzell and Bronson many, and it seems to me unanswerable, reasons are advanced for the conclusions reached. I shall not endeavor to advance further or different reasons. In fact I am of the belief that § 67 furnishes its own argument. It expressly says: "No act of the legislature shall take effect, etc." It does not say: "No act enacted at a regular session of the legislature shall take effect, etc." "The language is all-inclusive. It, and the preceding sections, cover all legislative enactments whether enacted at a regular or a special legislative session. By the express command of the Constitution this language must be construed as "mandatory and prohibitory." Const. § 21. It is the sworn duty of the members of this court to give effect to the will of the people as expressed in the fundamental law. Hence, it must be held that House Bill No. 60 contravenes § 67 of the Constitution, and is in fact no law at all.

ROBINSON, J. (dissenting). The majority decision will seriously impede and hamper the industrial progress of the state. It will largely undo the work of the special session, tie the hands of the lawmakers and the hands of the governor, and leave the state like a ship without a captain. It may induce several amendments to the Constitution and a recall of the court power to undo any act of the legislature. The power is arrogant and dangerous; its use must impede or ruin every state industry.

The case turns mainly on § 67 of the Constitution as amended, which is that no act of the legislature shall take effect until the 1st of July after its passage. We claim this general language does not apply to an emergency session, which may close eleven months before the 1st of the following July. While it is true that the words "of the section" have always the same literal meaning, yet they have not always the same application. They cannot apply to an emergency session without

nullifying the purpose of the session. An obstructive minority can nearly always defeat an emergency vote. Surely the Constitution is not so inconsistent as to provide for the calling of an emergency session, and at the same time to declare that without a majority of two to one no act of the session shall have any force or effect until some indefinite period of from four to eleven months after the close of the session.

This case presents a question on the constitutional validity of several acts passed by the late extra session, and especially House Bill No. 60. This provides that all acts of the extra session shall take effect within ten days after the session. The extra session passed acts reducing the appropriations, changing the members of the state board of equalization, the members of the state auditing board and of other boards, and as those acts did not receive a two-thirds majority vote, the old boards are claiming the right to hold over and their claim is disputed. The result is that the state treasurer has justly refused to honor warrants issued by either or any of the contesting boards. The presumptions are in favor of House Bill No. 60. By a large majority in each house, it was duly enacted and it was approved by the governor. Now the question is: Should this court assume to annul and declare void the act of our parliament?

By a recent amendment it is declared that no statute shall be held void unless by the concurrence of four judges. Hence, every statute must be held valid unless four judges concur in holding it void. The amendment might have gone farther and provided that no act of the legislative assembly shall be held void by any court. Then our courts would have no more power than the English courts to annul or hold void a statute. Then the Constitution would become a great Magna Charta, binding only on the conscience of the lawmakers. Then it would be no longer possible for one or two judges to overrule a large majority of the lawmakers; and that is the goal to which we are drifting. Great Britain has found no special danger from giving effect to every act of parliament and from putting the parliament above the courts and above the cabinet officers. The same rule prevailed in this country and in every state until changed by an able decision of Chief Justice Marshall. Then the courts began to assert the power by a

bare majority of one to annul acts of Congress and of legislative assemblies. Now the people begin to mistrust the courts and to trust the makers and interpreters of law and themselves. In either case there is not claim to infallibility. The most important decisions of the United States Supreme Court are given by a bare majority of one, which is, in effect, by one judge, and of course in all such cases when doctors disagree there must be grave reasons for doubting the correctness of the majority decision.

However, as rational beings, we must attempt to give a reason for the faith that is in us. In the construction of statutes and Constitutions it is certain that the literal meaning does not always control. It is an old maxim: He who sticks in the letter sticks in the bark. In an Oregon donation case the United States Supreme Court held that the words "single man" mean "a single woman" and include either men or women unmarried. [Silver v. Ladd, 7 Wall. 219, 19 L. ed. 138.] Similar cases are numerous. Reason is the soul of the law and when the reason of the law ceases, so does the law itself. "Laws are framed with a view to such things as are frequent, and not to such as are of rare occurrence." The regular session of our legislature commences in January and ends in March. Then it is but a short period from the close of the session until the 1st of July, when the body of the laws takes effect. On the contrary, a special session has been of rare occurrence. It may commence and end in July. From the close of the session until the 1st of the next July may be ten or eleven months. A special session is usually called for emergency purposes. The purpose of the session may be wholly defeated if the acts not passed by a two-thirds majority can have no force until the next July. These things may not have occurred to those who framed and who voted for the ten amendments, which were adopted in November, 1918. Those amendments were not framed by a convention of great legal architects similar to those who framed the Constitution of the United States. They were not framed by any known convention or body of men; their origin is unknown. What we do know is that at the general election in 1918, pursuant to a petition signed by some 50,000 citizens, the ten amendments were submitted to the electors and all the amendments had the strenuous support of the party in power and the strenuous

44 N. D.—41.

opposition of the other party. Among other things, the amendments provided for a radical departure in the affairs of state government, and for a great industrial system to be carried on by the state. They provided for the initiative and referendum, or direct legislation by the people. Ten thousand voters at large may propose a measure and have it submitted to the people, and, if adopted, it becomes a law and the governor may not veto it. The initiative petition is the proper method of reviewing and undoing any act passed at an emergency or special session. In general language, the amendments declare 7,000 voters at large may, by referendum petition, suspend the operation of any measure enacted by the legislature, except an emergency measure. Nowhere do we find anything to indicate that the above refers to an act passed at an emergency session. Nothing is said of such a session. It may be that it was not considered or that it was thought best to leave the same without any special provision.

The amendments expressly give the state and any county or city power to engage in any industry, or enterprise, or business. Now, to make a success of any business, it must be done in a businesslike way. There must be some head to the business. If it is done by a corporation, its board of directors must have power to meet frequently and to make rules and regulations and to give the same immediate effect. The state is a public corporation; the lawmakers are its directors. To do a successful business they must meet as occasion requires and make necessary laws, rules, or regulations, and give the same effect; and why should the directors meet and pass rules if they cannot give effect to the same, or if the rules may be suspended on a petition of 7,000 or 10,000, or even 30,000 voters. If the people do not like the rules or laws adopted, it is easy enough to undo them by the way of an initiative petition and a vote at the next general election, or by electing other directors for the state corporation.

To illustrate, let us consider the reasons for calling the late extra session and for passing the acts in question. The governor is the head of the state. He is the chief executive officer. It is his special duty to take care that the laws be faithfully executed. His principal cabinet officers and coworkers are the secretary of state, the attorney general, the state auditor and treasurer. Unfortunately during the summer of

1919 there came about a great split between the governor and his cabinet. The house was divided against itself and ready to fall. The division went to such an extent that one or more of the principal cabinet members—and the chief law officer—passed a considerable portion of the time going over the state berating the governor and his measures and thus expending the public money and neglecting their official duties. Some members of the state auditing board came to practically ignore the governor, and to meet and allow numerous bills against the state regardless of objections by the governor. Then it appears that the cabinet officers and their legal adviser, acting as a state board of equalization, put up the assessed valuation of property to about five times what it was in 1918, and in that way they virtually removed all limits on tax levies. Thus the municipalities were permitted to levy exorbitant taxes, and for this—their own fault as well as the act of the governor—the cabinet officers went onto the stump disclaiming against the governor and his advisers, as though he alone were responsible. The result was an emergency session of the lawmakers, the directors who represent the people of the state, and whether right or wrong, they came to the conclusion that some of the cabinet officers could not longer be trusted with the disposal of the public money. If these officers had done their duty faithfully it is quite certain the excessive appropriations would not have been allowed; the enormous assessments would never have been made, and there would be no reason to complain of the excessive tax levies.

Now the question is: Should this court assume to impugn the wisdom of the lawmakers and to undo the effect of their legislation; should the court set itself above the legislature and practically undo all the work of the extra session? Should the court make a decision that would tie the hands of the state corporation, its directors and officers and deny them the right to give immediate effect to such laws, rules, or regulations as they may deem necessary and proper to make a success of the state industries? The answer must be, "No." Hence the conclusion is that House Bill No. 60 is a valid statute, and that the state treasurer should pay only bills, claims, and accounts allowed pursuant to laws passed at the extra session.