The City of St. Joseph v. Elliott.

THE CITY OF ST. JOSEPH, Respondent, v. C. P. ELLIOTT, Appellant.

Kansas City Court of Appeals, November 9, 1891.

*Motion for Rehearing Overruled January 18, 1892.*

1.  **Construction:** SUNDAY LAWS: OTHER PLACES OF BUSINESS: THEATER: EJUSDEM GENERIS AND OTHER RULES. The rule of *ejusdem generis* in construction of statutes is used to help carry out the legislative intent and not to thwart it, and, where its application would be in the face of the evident meaning of the legislature, it will not be applied. Where the expression is special or particular, but the reason general, the expression should be deemed general; and an interpretation should never be adopted that will defeat its own purpose if any other reasonable construction is admissible. So "other places of business" in a Sunday ordinance, though it follows "store, shop," and is followed by "sell or offer to sell," is construed to include theatrical performances on Sunday.

2.  ———: RELIGIOUS OBSERVANCE: CIVIL REGULATION: DESECRATION. Conceding that statutes for the observance of Sunday are civil regulations for the government of members of society, it is nevertheless true that they spring from christian convictions of the people and a part of the object of their enactment was to prevent a desecration of the day.

*Appeal from the Buchanan Criminal Court.*—HON. SILAS WOODSON, Judge.

AFFIRMED.

*Brown & Craig* and *James F. Pitt*, for appellant.

(1) The general words, "or other place of business," refer only to such places of business as are *ejusdem generis* with stores and shops. The theatrical business is not of the same kind as the business of merchandising, which is conducted in stores and shops, and, consequently, the theater is not the same kind of a place of business as the store or shop. Sutherland on Stat. Const., secs. 268–276; *City of St. Louis v. Laughlin*, 49 Mo. 559; *City of St. Joseph v. Porter*, 29 Mo. App. 605; *State v. Pemberton*, 30 Mo. 376; *Sandman v. Breach*, 7 B. & C., 99, 100. And there is nothing in the subject-matter of this case which calls for any modification of the above rule. *Bloom v. Richards*, 2 Ohio St. 387; *Moore v. Clymer*, 12 Mo. App. 11; *Specht v. Commonwealth*, 8 Bar. 312; *Charleston v. Benjamin*, 2 Strobh. Law, 508. (2) In ascertaining the true intent and meaning of a law, it is proper to resort to other statutes *in pari materia*. *City of St. Joseph v. Porter*, *supra*; *In re Bromino's Estate*, 83 Mo. 433, 441.

*P. J. Carolus* and *L. P. Huston*, for respondent.

(1) The language of the ordinance is sufficient to include the business of the appellant under the admitted statement of facts. *State v. Williams*, 35 Mo. App. 541, and cases there cited and reviewed. "The object of the ordinance was evidently to restrain the doing of those things which are offensive to a christian community by being done on that day"—Sunday. *State v. Williams*, *supra*. The object intended must be kept in view in construing the ordinance. It is only because the business is done on Sunday that it is an offense. Then it is to secure the quiet and repose of that peculiar day known and revered by the great body of our people

as the American Sunday. And this purpose is the guide to the legislative intent, and the rule contended for by appellant will not be applied in the face of such intent. *Shropshire v. Gasscock*, 4 Mo. 536 ; *Boynton v. Coele*, 4 Mo. 599 ; *Eubanks v. State*, 5 Mo. 450 ; *Hayden v. Little*, 35 Mo. 418 ; *State v. Williams*, 2 Straf. ( S. C.) 474 ; *State v. Holman*, 3 McCord ( S. C.) 306 ; *Commonwealth v. Percuril*, 4 Leigh (Va.); *Foster v. Blount*, 18 Ala. 687 ; *State v. Cooper*, 5 Day, 250 ; *Com. v. Wyman*, 8 Met. 247 ; *U. S. v. Briggs*, 9 How. 351. (2) The words "stores and shops" cover all places of mere merchandising, and, unless the general terms, or "other place of business," are intended to include other than mere merchandising places, they serve no purpose and are entirely superfluous.

ELLISON, J.—This record presents the single question whether the defendant, who manages an opera house in the city of St. Joseph, a city of the second class, and gave therein a theatrical performance on Sunday evening, September 28, 1890, at which he made the same charge for admission which he made on other nights, is guilty of a misdemeanor under the provisions of an ordinance of said city which provided as follows : " Sec. 6. *Business houses not to be kept open on Sunday.*—No person shall, in this city, play on Sunday, at billiards, ten pins or other games of amusement, or shall, on that day, keep his store, shop or other place of business open, or sell or offer to sell any goods, wares or merchandise, and every person so offending shall be deemed guilty of a misdemeanor."

The city contends that the defendant is guilty because the words, "other place of business," in the section quoted include a theater, and the defendant denies that those words, as there used, have any reference to a theater. This difference of opinion constitutes the whole subject of contention in this appeal taken by defendant.

Defendant contends that the general words, "or other place of business," refer only to such places of business as are *ejusdem generis* with stores and shops. We examined a similar question to this in *State v. Williams*, 35 Mo. App. 541. That case, like this, was in reference to matters prohibited on Sunday. Not things prohibited generally, but on *that day*. The object of the statute in that case and the ordinance in this was to prevent a desecration of the Sabbath. There is no doubt of this. So, then, while the familiar rule, "that where particular words of a statute are followed by general,—as if, after the enumeration of classes of persons or things, it added 'and all others,'—the general words are restricted in meaning to objects of the like kind with those specified," is not questioned, yet the object of the rule must be kept in view. That object is to help carry out the legislative intent and not to thwart it. "Where, therefore, the application of the rule would be in the face of the evident meaning of the legislature, it will not be applied. Bish. Stat. Crimes, sec. 246 ; *Woodsworth v. State*, 26 Ohio St. 196. So, where the expression in a statute is special or particular, but the reason is general, the expression should be deemed| general. 1 Kent, 462. 'In construing statutes, penal as well as others, an interpretation must never be adopted that will defeat its own purpose if it will admit of any other reasonable construction,' 9 Wheat. 381." *State v. Williams, supra ; State v. Vindquest*, 36 Mo. App. 584. The words, "or other place of business," must be allowed a use or operative effect. Defendant seems to contend that they should be confined to places of like kind, to stores or shops where merchandise is handled. This is too narrow for the evident general object of the ordinance. Allowing such contention to be well-founded, you could not punish him who kept open on Sunday his billiard hall or tenpin alley. For the portion of the ordinance which

names these is directed at the players and not the proprietors; and a billiard hall or a ten-pin alley is not a store or shop. Such hall or alley is, however, the place of business of the proprietor, and to catch him you must utilize the words, "or other place of business." Evidently these words were intended to embrace a place of amusement which is kept as the "place of business" of the proprietor. The defendant was rightly convicted, and with the concurrence of the other judges the judgment is affirmed.

### ON MOTION FOR REHEARING.

ELLISON, J.—The motion for rehearing is grounded chiefly on the fact that the foregoing opinion makes use of the word "desecrate," and cites *State v. Williams, supra*, where the same word is used. It is argued from this that, since to desecrate a day means to take from it its sacred or religious character, and since we have stated the object of the law to be to prevent the desecration of the Sabbath, such law is unconstitutional, in that it contravenes article 2 of the state constitution, guaranteeing religious freedom and liberty of conscience.

Whether laws enforcing the observance of Sunday be bottomed alone on matters spiritual and religious and have for their sole object the enforcement of religious duty, or whether such laws are merely the exercise of the state's police power regulating the customs, peace or health of the people, can make no practical difference to this defendant. These laws, under constitutions like ours, are *everywhere* upheld, though the reasons upon which they are sustained are various. So if defendant has been convicted on the theory that the law made him observe the Sabbath either from a religious duty to God, or a political duty to the state, or a social duty to his fellows, or *all of these combined*, can make no difference. Each of the foregoing have been given as reasons back of the law, and each leading to

the one result of upholding the law, and convicting this defendant.

It is not our province to decide this ordinance to be constitutional for one or the other of these reasons, and we do not undertake to do so. But that it is proper to hold that it is an object of such laws to prevent the desecration of the Sabbath, there can be no doubt. To say otherwise would be to shut one's eyes to all history and to isolate one's self from his daily surroundings. Because no one can be compelled to do any act of religious service on Sunday, it by no means follows that he cannot be prevented from desecrating the day. For I apprehend that no man will be found with sufficient temerity to say that all Sunday laws in this country have not as a *part*, at least, of their object the protection of the observance of religious duties, and that the moving cause of their enactment was not in obedience to, and the result of, religious sentiment existing in the state where enacted.

*Bloom v. Richards*, 2 Ohio St. 387, is a leading case taking the ground that such laws find their support in the police power of the state which could as well have fixed upon any other day of the week; yet Judge THURMAN says, in his opinion, that the statute could not stand "if its *sole* foundation was the christian duty of keeping that day holy, and its *sole* motive to enforce the observance of that duty." He further says that Sunday was properly selected by the legislature because of the feelings of a christian people.

So another case asserting the same reason for such laws (*Specht's case*, 8 Barr. 312) concedes that the motive of the law-makers, as shown by the statute itself, was "to prohibit the profanation of a day regarded by them as sacred." The court further says on the same subject: "In a christian community where a very large majority of people celebrate the first day of the week as their chosen period of rest from

labor, it is not surprising that that day should have the legislative sanction ; and as it is also devoted to religious observances we are prepared to estimate the reason why the statute should speak of it as the Lord's day, and denominate the infraction of its legalized rest a profanation. Yet this does not change the character of the enactment. It is still, essentially, but a civil regulation made for the government of man as a member of society, and obedience to it may properly be enforced by penal sanction. To say that one of the objects of the legislature was to assert the sanctity of the particular day selected, is to say nothing in proof of the unconstitutionality of the act."

In the eye of all that class of authorities which maintain such laws from a religious or divine standpoint, to prevent desecration of the day is, of course, the leading and chief object; so it will thus appear, that, from whichever standpoint the matter is viewed, the opinion is not subject to the criticism made by counsel.

Though the foregoing disposes of the motion, will add on my own responsibility, that whatever may be individual opinion on the question of Sunday observance, whether as a religious, social or political duty, there can be no doubt in the mind of any man, who will be fair with himself, that the motive power behind all these laws is the christian religion, and that they are enacted in compliance with the demands of a christian people. And, as · said in Tiedeman's Limitations of Police Powers, "those who are most active in securing the enforcement of Sunday laws do so, because of the religious character of the day, and not for any economical reasons." And so the great weight of authority recognizes this ; and while some mingle the civil and the religious, the divine and the human, in their reasoning, there are few, indeed, who altogether omit the divine. Thus the day is termed in different adjudications on Sunday laws as a "holy day," a "sacred day," a "day

of sanctity," the "Lord's day," as a "consecrated day," and as being set apart by "divine command." And so Judge SCOTT in *State v. Ambs*, 20 Mo. 214, with that blunt honesty of purpose, which distinguished him, says, that our constitution was "made by christian men" and that "on its face it shows that the christian religion was the religion of its framers," and that long before it was framed "experience had shown that the mild voice of christianity was unable to secure the due observance of Sunday as a day of rest," without the aid of the civil powers.

The truth is that some courts having concluded (perhaps without sufficient justification) that laws enacted for the observance of Sunday as a religious duty were repugnant to constitutions guaranteeing religious freedom, and yet determined to uphold them, have set about to find other reasons than those based on christianity.   These reasons Ringgold, in his work on the law of Sunday (p. 101), declares to be an "afterthought of the courts ; that is to say, that it is an attempt to find a sanction for these statutes in considerations which have never been the moving causes of their enactment."   He further says (p. 88), in speaking of some opinions on this subject that, "in more than one instance, there is a manifest consciousness of the fallacies maintained, which suggest that the reasoner is suffering an intellectual martyrdom as sublime, in its way, as any physical sacrifice of the olden time."

But, as before stated, whatever may be the reason for such statutes they are valid enactments.   The motion will be overruled.