(64 N. W. Rep. 943.)

---

*In re* HENDRICKS.

Opinion filed July 11th, 1895.

**Revised Codes—Time of Taking Effect.**

> Chapter 74, Laws 1893, provides for a revision of the statutes of the state, and for the publication of such revision in a volume to be known as the "Revised Codes," and section 7 of the act provides that the finished copies of the volume shall be delivered to the secretary of state, and thereupon the governor shall issue his proclamation announcing such delivery and his acceptance of the volume "and thirty days after the date of his proclamation said Revised Codes shall take effect and thereafter be in force and be received as evidence of the laws of this state in all the courts thereof." *Held*, that it was not only the legislative purpose to fix by said section the date at which the volume should be received as evidence, but also to fix a date when the system of laws contained in the volume should go into effect; and *held*, further, that the alterations in and additions to the laws directed to be published in said volume do not, except when otherwise provided by an emergency clause, go into effect until the completion of the events specified in said section 7.

Application of Stephen A. Hendricks for discharge on a writ of *habeas corpus*.

Application granted.

*George W. Newton*, for petitioner.

*J. F. Cowan*, Atty. Gen., in opposition.

BARTHOLOMEW, J.   Stephen A. Hendricks, a prisoner confined in the penitentiary at Bismarck, being in the County of Burleigh and within the limits of the Sixth Judicial District of the State of

North Dakota, on the 5th day of July, 1895, presented to the Supreme Court his petition for a writ of *habeas corpus* to be directed to the warden of said penitentiary, for the purpose of testing the legality of his imprisonment. This court, being in doubt as to its authority to issue the writ upon the petition presented, directed by order that a copy of the petition be served upon the attorney general of the state, which was accordingly done, and the attorney general filed certain objections to the allowance of the writ, and the objections were fully argued by the attorney general and counsel for the petitioner. The objections filed contained the following: "That by the provisions of section 886 of the Code of Criminal Procedure passed February 21, 1895, by the fourth legislative assembly of the State of North Dakota, and approved March 2, 1895, it is provided, regarding the issuance of the writ of *habeas corpus* and the jurisdiction of the courts and judges so to do, as follows: The writ of *habeas corpus* must be granted: 1. By the Supreme Court or any judge thereof, upon petition by or on behalf of any person restrained of his liberty in this state. When so issued it may be made returnable before the court, or any judge thereof, or before any District Court or judge thereof. 2. By the District Courts or any judge thereof, upon petition by or on behalf of the person restrained of his liberty in their respective districts. When application is made to the Supreme Court, or to a judge thereof, proof by the oath of the person applying, or other sufficient evidence shall be required that the Judge of the District Court having jurisdiction by the provisions of subdivision 2 of this section is absent from his district, or has refused to grant such writ, or for some cause to be specially set forth, is incapable of acting, and if such proof is not produced the application shall be denied."

It is conceded that the petition contains no proof or statement that the Judge of the Sixth Judicial District is absent from his district, or has refused to grant the writ, or is in any manner incapable of acting upon the application of the petitioner. Prior to the enactment of the provisions above set forth, application for

the writ of *habeas corpus* might be made direct to the Supreme Court, without any reference to the Judge of the District Court of the district wherein the petitioner was confined. The learned counsel for the petitioner contends that the provision of the Code of Criminal Procedure enacted by the 4th general assembly have not yet gone into effect and are not in force, that we are still acting under the provisions of the law as it stood prior to that enactment, and hence his petition is sufficient in that respect. The attorney general, on the other hand, contends that all of the provisions of the Code of Criminal Procedure enacted by the 4th general assembly that were not theretofore in effect went into effect and became of binding force on July 1, 1895. This is the controversy, and the only controversy, that we are required to decide, in passing upon the sufficiency of the petition. The provisions of our constitution and laws are such that the question is involved in some uncertainty. For convenience, we will at this point refer to all of the provisions bearing upon the subject that it will be necessary for us to discuss in this opinion.

Section 1 of Ch. 3 of the Session Laws of Dakota Territory for 1889 reads as follows: "That all laws hereafter enacted by the legislative assembly of Dakota unless otherwise expressly provided therein shall be in force and take effect on the first day of July after their passage and approval." Section 67 of our state constitution reads as follows: "No act of the legislative assembly shall take effect until July 1st, after the close of the session, unless in case of emergency (which shall be expressed in the preamble or body of the act) the legislative assembly shall, by a vote of two-thirds of all the members present in each house, otherwise direct." The 2nd legislative assembly, by Ch. 82, Laws 1891, created a compilation commission whose duty it was "to compile, arrange, classify and report the laws of this state which may be in force on the 1st day of July, A. D. 1891." It was by said act further provided: "There shall be printed and bound as aforesaid, 2,000 copies of such Compiled Laws, and delivered to the secretary of state for distribution and sale, and

the governor shall issue his proclamation announcing such fact and his acceptance of such compilation and revision, and thirty (30) days after the date of such proclamation said compilation shall go into effect and thereafter the laws so compiled shall be received by all the courts and officers of this state, as original enrolled acts approved and filed in the office of the secretary of state as now provided by law." The legislature that convened in 1893 saw proper to create another commission known as the "Revising Commission," and to fix their duties and powers. This was done by chapter 74 of the Session Laws of that year. The first section provides the manner in which the revising commission shall be appointed. The second provides that such commission shall have charge of the report of the compilation commission. The third section reads: "It shall be the duty of the revising commissioners: First. To examine the laws reported by said committee for compilation and compare the same with the statutes of Dakota Territory and the State of North Dakota with due reference, also, to the constitution and such other enactments as may effect their validity, and make convenient notes of reference indicating what statutes or parts of statutes not in force, if any, are now included therein, what statutes or parts of statutes still in force are omitted therefrom, what changes are necessary by reason of the enactments of this session of the legislative assembly, and generally what inconsistent, conflicting or superfluous provisions are to be found in the existing laws, and what statutes or parts of statutes are of doubtful force or validity, and make such further investigation as may be necessary to bring before them the real state of the law. Second. To revise the law generally, by rejecting all unnecessary, inharmonious, obsolete or otherwise objectionable enactments, and reporting them in proper bill form for the purpose of repeal to the fourth session of the legislative assembly, and adopting only those statutes or parts of statutes in distinct sections, which do not require change, and by preparing anew and embodying in connection therewith, upon any particular subject wherein

it may be found necessary, such other provisions as may be required to avoid uncertainty and harmonize and complete the law according to its true intent; and all newly prepared matter so introduced shall be reported to the fourth legislative assembly in the form of appropriate bills for enactment or re-enactment, each of which shall designate by the proper number or numbers the section or sections of the Revised Code for which it is intended." The third subdivision of this section directs the commission to codify the laws so adopted and revised under seven titles, namely: The Political Code, the Civil Code, the Code of Civil Procedure, the Probate Code, the Justices' Code, the Penal Code, and the Code of Criminal Procedure. The fourth subdivision directs the commission to prepare the codes in proper form to be used by the printer, for publication in one octavo volume, to be known as the "Revised Codes of North Dakota." The fourth section reads: "As soon as practicable after the adjournment of the fourth regular session of the legislative assembly, said revising commissioners shall complete their codifications by incorporating therein the general laws passed at said session in the manner hereinbefore prescribed." The fifth and sixth sections pertain to the printing of the volume, and the seventh section reads: "The printed copies shall be delivered when completed to the secretary of state, and the governor shall issue his proclamation announcing the delivery and his acceptance of such copies, and thirty days after the date of his proclamation said Revised Code shall take effect and thereafter be in force and be received in evidence of the laws of this state in all courts thereof."

A decision of the point here involved requires a particular construction of this section 7. The attorney general contends that the sole object and purpose of the legislature in its enactment was to fix a time when the printed volume should become evidence of the laws, and that the legislative intent would have been as fully expressed and more clearly expressed had the language been: "And thirty days after the date of his proclama-

tion said Revised Codes shall be received as evidence of the laws of this state in all courts thereof." After careful consideration of all the provisions bearing upon the subject we are unable to accept the views of the attorney general, but, on the contrary, reach the conclusion that the Revised Codes, as such, do not go into force or become effective as law until 30 days after the date of the governor's proclamation accepting the printed volume. Before discussing the causes which lead us to this conclusion, it is justice to the attorney general that we notice the reasons that have been so strongly pressed upon us in support of his views. It is urged that the words of the section—"and thirty days after the date of his proclamation said Revised Codes shall take effect and thereafter be in force"—necessarily imply that the thing thus put in force was not in force before, and that the statute must have a construction not antagonistic to this plain implication, and it is urged, by way of illustration, that the language fixing the time when the Revised Codes should go into effect is identical in its import with the language used by the 2nd general assembly in fixing the time when the anticipated volume to be prepared by the compilation commission should take effect. But as that commission was directed to compile the laws that might be in force on the first day of July, 1891, and as it could compile nothing not then in force, it would be an absurdity to claim that the laws thus compiled were not in effect until the compiled volume was published, and hence the legislature must have intended to fix only the time when the printed volume should go into effect as evidence of the laws. And by reason of the great similarity, if not identity of import, in the language used in the statutes of 1891 and 1893 it is claimed that the latter must receive the same construction as the former, particularly as the conditions are practically the same. The commission created by the act of 1893 were required to make such investigation as should "bring before them the real state of the law." They were then directed to revise the law generally, by recommending such eliminations, alterations, and changes as might be required "to avoid uncer-

tainty, and harmonize and complete the law according to its true intent." It is urged that under this authority the great mass of the law, which—as was well known—as already harmonious and certain, would remain unchanged and continue in force, just as it had been in force, perhaps for years, and that it never could have been the legislative purpose that such laws should go into effect and be of force only after the publication of the volume and the governor's proclamation accepting the same. The difficulty with this position in both instances arises from confounding the Revised Codes as an entity and as a system of law with particular enactments that may be therein incorporated. Particular acts and any number of them may have been theretofore in force, but the entire statutory law of the state is to be presented in a new and different form with new and different matter, i. e. in the form of the Revised Codes. As the system of law thus presented never before had an existence, it could not, as a system, have been in force, and it was entirely competent that the legislature should fix a time when it should go into effect and be of force, and the learned attorney general admits that, in a proper case, the legislature may name a date that is uncertain or that depends upon a contingency.

Another argument is based upon the fact that the act of 1893 requires the revising commission to incorporate the general laws to be passed by the 4th general assembly—the legislature of 1895 —with the Revised Codes. The statute of 1889 already quoted provides, in effect, that, except for reasons expressed therein, all laws passed by the legislature shall go into effect on the 1st day of July succeeding their passage. Section 67 of the constitution provides that, except in cases of emergency, laws passed by the general assembly shall not go into effect prior to July 1st succeeding their passage. It is urged that if the acts of the 4th general assembly can only go into effect upon the publication of the Revised Codes and the proclamation of the executive accepting the same, then the act of 1893 repeals the act of 1889 and violates the constitutional provision. We think otherwise. We

do not, however, agree with the learned counsel for the petitioner that the adoption of the constitution worked a repeal of the act of 1889. There is no repugnancy. The constitution provides that the laws shall not go into effect prior to a certain date. The statute provides that they shall go into effect on that particular date. The two provisions can stand together. But under the constitution it was perfectly competent for the legislature of 1893 to fix a date subsequent to the 1st of July next succeeding their passage as the time when the anticipated laws of the 4th general assembly should take effect. Nothing but the act of 1889 stood in the way, and that, being only a legislative enactment, could not control a subsequent legislature. The law of 1893 did not repeal the law of 1889, but excepted the laws to be passed by the 4th general assembly from the operation of that law. But the legislature of 1893 could not control the legislature of 1895, and when the latter passed an act with an emergency clause and declared, "This act shall go into effect and be in force from and after its passage and approval," such action took such act out of the operation of the statute of 1893 and the act became effective immediately upon its approval. But the general laws of the 4th general assembly passed without emergency clauses would remain under the act of 1893, and would go into effect only upon the publication and acceptance of the Revised Codes. Against this proposition it is urged that, if such be the law, then the revising commission may by accident or design omit some such act or acts from the Revised Codes, and thus nullify the expressed will of the legislature, and arrogate to themselves legislative functions, contrary to the provisions of the constitution. This argument is not sound. An examination of the act of 1893 as herein quoted will show that the commission are required to codify all the general laws of the 4th general assembly in the Revised Codes. A law should never be condemned because its disobedience may be followed by unfortunate or unconstitutional consequences. Not only are the codifiers required to incorporate the laws of the 4th general assembly in the Revised Codes, but,

after the volume is published, and before it can have any force or effect, the governor of the state is required to issue his proclamation accepting the volume, and thus announce to the citizens of the state that all the requirements of the law have been met in its production. It is not to be presumed for a moment that the executive will accept the volume unless the laws of 1895 are properly incorporated therewith. The reasons urged in support of the position of the attorney general are plausible, but in our judgment entirely insufficient.

The grounds upon which we base our conclusion that the Code of Criminal Procedure, as revised and changed by the 4th general assembly, does not go into effect until 30 days after the date of the governor's proclamation accepting the printed volume of the Revised Codes, are few, and may be briefly stated. They rest largely upon the express language of section 7 of the act of 1893. This section, after directing that the printed copies shall be delivered to the secretary of state, and that the governor shall issue his proclamation announcing the delivery and his acceptance of said copies, continues: "And thirty days after the date of his proclamation said Revised Codes shall take effect and thereafter be in force, and be received as evidence of the laws of this state in all the courts thereof." There is no more elementary rule of construction than that which requires a statute to be so construed as to give full force and effect to all its terms. This rule should be departed from only when it clearly appears that its enforcement would not reflect the legislative intent. To hold in this case that the statute only determines the time at which the Revised Codes shall be received as evidence of the laws requires us, as the attorney general concedes, to entirely reject the words "take effect and thereafter be in force." The idea would be much better expressed without them. They become, not only surplusage, but they become mischievous, and convey to the mind a radically different conception. None of the reasons urged by the attorney general, and none that we can conceive to exist in this case, show clearly that the legislative purpose in the enact-

ment of the section was confined to the one object of making the Revised Codes evidence of the laws. Hence, under elementary rules we are not at liberty to reject any of the terms of the section. And this rule must apply with unusual force in a case like the present, where the language used is such as has been used from time immemorial in this country, and is familiar to all courts, lawyers, and legislators, and which, when used in substantially the connection in which we here find it, is always used to mark the time at which the law becomes effective and binding upon all persons within the jurisdiction. And it must be a clear case indeed that will warrant us in wresting from the words their familiar, usual, and long established signification, and reducing them to tautological surplusage. We find nothing in the statute that requires this, but, on the contrary, we do find in the statute, aside from the unequivocal language used, strong indications that it was the legislative purpose in the enactment to fix the time when the Revised Codes, as such, should go into effect and possess binding force. If all the provisions of the Revised Codes were in force and effect at and prior to the time when the published copy should be publicly accepted by the executive, and if the sole purpose of the section under consideration was to make the Revised Codes authoritative evidence of the laws, then why were they not so made evidence at once? Why was their evidential character postponed for 30 days? All the provisions being in force, and the printed volume being complete, the most natural and reasonable course would have been to declare it evidence *eo instanti*. No reason whatever for postponement has been suggested, and we can think of none. On the other hand, if the changes made in the laws by the Revised Codes were not already in force, and if such Revised Codes furnished to the people of the state their first opportunity of ascertaining the changes that had been made in the laws, save and except the limited opportunity offered by consulting the enrolled bills in the office of the secretary of state, then it becomes highly reasonable and proper, if not absolutely necessary, that some time should elapse

in which courts and officials charged with the duty of applying and enforcing the laws, as well as the citizens generally, should have the opportunity of obtaining the means of ascertaining what the changes in the laws were before they should be required to enforce or comply therewith.

We do not concede the contention of the attorney general, that the language used in the statute is ambiguous, but, even if that were granted our conclusion would not be different. Where the language used is ambiguous, courts may, in the construction of a statute, properly consider the hardship, the inconvenience, and the benefits that would adhere to any particular construction of which the language used is susceptible, and that construction should be adopted which will most favor public convenience and prevent hardship or injustice. Suth. St. Const. § 324. We do not hesitate to declare that any construction of the statute under consideration which would put the changes in the laws accomplished by the revision in force before their publication, and before they have been made available to the public generally, would be productive of great public inconvenience, of hardship, and perhaps positive injustice. It is well known that the 4th general assembly, largely at the instance of the revising commission, and by means of bills prepared by them, made radical and sweeping changes in our system of laws. Old provisions, old methods, and old procedure have been swept away, and new substituted therefor. It does not answer this position to say that the act of 1893 did not contemplate any such radical action by the revising commission. That commission received its authority from the legislature, and, so far as its work has been accepted and enacted into law, its acts have been ratified by the same power from which it received its original authority, and hence, for practical purposes, power to perform those acts must be read into the original act. If these changes be declared in effect prior to their publication and acceptance, then it will be always highly dangerous and often impossible to take any steps in the administration of the law without resorting to the inconvenient,

expensive, and sometimes impossible course of consulting the enrolled bills. Even were the statute ambiguous, we would not give it a construction productive of such mischief.

The questions raised by the objections of the attorney general are of such importance to the people of the state just at this time that we have deemed it proper to formulate an opinion expressing our views at length.

The objections of the attorney general are overruled. All concur.