MILDRED KLINGENSMITH, Respondent, v. MATT SIEGAL
and Tillie Siegal, Appellants.
and
ETHEL WEISS HEFFNER, Formerly Ethel Weiss, Respondent,
v. MATT SIEGAL and Tillie Siegal, Appellants.

(224 N. W. 680.)

Opinion filed April 1, 1929.

*Conmy, Young & Burnett,* for appellants.

*Richardson & Wattam (W. C. Green* of counsel), for respondents.

BIRDZELL, J. The plaintiffs brought separate actions against the defendants to recover damages for personal injuries sustained by them which were occasioned by a fire in an apartment or flat building belonging to the defendants. The two actions were tried together and judgments favorable to the plaintiffs were entered upon separate verdicts. Thereafter the defendants moved for judgment non obstante. The motions were denied, and the defendants appeal from the orders.

On February 1, 1927, the plaintiffs in these actions, Mrs. Klingensmith and Miss Weiss (now Mrs. Heffner), occupied a small room on the third floor of an apartment building known as the Colonial Apartments at Seventh street and First avenue south in the city of Fargo. The building was a three story structure with a full basement, and contained fourteen apartments, two in the basement and four on each floor above. The room occupied by the plaintiffs was a

front hall room made by partitioning off the hall toward the front of the building. There was a front apartment on each side of the room occupied by the plaintiffs and a fire escape was constructed outside the most remote of three windows in each of the apartments. No rope was provided as a fire escape in the room. The distance from the window in the plaintiffs' room to the fire escape was about eighteen feet. There were also fire escapes at the rear of the building. The plaintiffs could have gained access to the fire escapes adjacent to their room only by going into the hall and from thence into a front apartment. Early in the morning of February 1, 1927, they were awakened by smoke. There was a paper or rubbish chute communicating with the lower part of the building, through which the smoke seemed to come in volume into the upper hall. They attempted to gain access to the front apartment occupied by the family with whom Miss Weiss was living and working, but were unsuccessful. They returned to their room and when it had become intolerable for them to remain there they broke the glass out of the storm window, then stood on and hung to the window ledge, where they received severe burns. They were later rescued from the balcony beneath the window of their room.

The defendants seek a reversal of the judgments obtained, on the theory that, having complied with the city ordinance of the city of Fargo in the matter of providing fire escapes upon the building in question, they are not liable for the injuries sustained by the plaintiffs; whereas, the respondents contend that while the defendants might have complied with the city ordinances they have not complied with the state law and hence are liable. The appellants advance two main propositions: first, that the building in question is not such a building as is required, under the state law (Comp. Laws 1913, § 2977), to be equipped with fire escapes, thus raising a question of statutory construction; and second, that even though the building might be considered to be within the statute, the statute ceased to be applicable when the city had adopted an ordinance covering fire escapes pursuant to a delegation of legislative authority contained in the charter for a commission system of government (Comp. Laws 1913, § 3818, ¶ 39.) We will consider these propositions in the order stated.

The first act brought to our attention is chapter 58 of the Laws of Dakota Territory for 1883, which in its title purports to be an act providing for fire escapes from hotels. Section 1 provides "that the owners and proprietors of all hotels and other public buildings, in the Territory of Dakota, over two stories in height, are required to provide several and suitable fire escapes from all rooms above the second story of such hotel," etc.

In 1887 another act was passed (chapter 54, Laws of Dakota Territory for 1887) purporting to regulate the "manner of ingress and egress of public buildings, fire escapes," etc. Section 4, relative to fire escapes, provides: "All factories, public halls, hotels, and all other buildings in which large numbers of people congregate, which are two or more stories in height, shall be provided by the owners thereof with two or more fire escapes, placed within easy access of the occupants of said building." This act contained no repealing clause. In 1895 the Code commission, authorized under chapter 74 of the Laws of 1893, incorporated in the political Code, as article 18, of chapter 22, two sections dealing with fire escapes, which are not identical with either the act of 1883 or 1887. This Code was adopted by the legislature in 1895. The marginal note in the Revised Codes of 1895 indicates that § 1 of chapter 58 of the Laws of 1883 is amended. The amendment, however, is only as to the description of buildings included within the requirement. The 1883 act was confined to hotels and other public buildings; whereas, the 1887 act was applicable to factories, public halls, hotels and all other buildings in which large numbers of people congregate. But the 1895 act struck out the term "public buildings," added a term which had not appeared in either of the other acts, namely, "offices," and dropped the qualifying expressions applicable to other buildings, namely, "all" and "in which large numbers of people congregate." It likewise dropped the expression used in the act of 1883 "and all other public buildings." That portion of the act of 1895, which is under construction, reads: "The owners and proprietors of all hotels, factories, public halls, offices and other buildings in this state, over two stories in height, are required to provide safe and suitable fire escapes from all rooms above the second story of such hotel or other building," etc., continuing, as in the act of 1883, "and when rooms have no outside windows there shall

be affixed to the windows in the hall way leading from such room at least three fire escapes in each window as herein directed. Such fire escape shall consist of at least one good cotton rope not less than one inch in diameter, to be securely and permanently fastened with iron rings or bolts at a point immediately outside or inside of at least one window in each room above the second story; and that such rope shall be of sufficient length to reach to the ground; provided, that if the owner or proprietor of any such buildings shall provide good and sufficient iron ladders extending from each of the windows herein mentioned, and from points immediately adjacent to each of such windows, to the ground, and securely and permanently fastened to said building, or shall have the fire escape ladder in each of the rooms and hall windows aforesaid, of sufficient length to reach from such windows to the ground, he will be deemed to have complied with the requirements of this section."

: It is said that where a Code is adopted the prior law is not regarded as changed unless the intention of the legislature is clear, and that a change will not be deemed contemplated where there is a mere change in phraseology. Emphasis is laid on the fact that the Code commission was not authorized to amend previous legislation. The argument seems to proceed upon the theory that a building such as that in question would not have been within either the 1883 or 1887 law, and that, if it is made subject to the provisions of the General Law of 1895, it has been made so by the codifiers.

We are of the opinion that this argument proceeds upon a false premise, as we shall presently point out. It overlooks the fact that the Code commission in many instances intentionally made additions to the existing statutes, incorporating wholly new provisions (See commissioners' preface to the Revised Codes of 1895); and that the codes themselves, incorporating such changes, were submitted in the report of the commissioners · and were introduced as separate bills in the legislature and so enacted. The code commissioners, for authority for much that was done in this direction, probably placed most reliance in § 3 of the Code Commission Act (chapter 74 of the Laws of 1893). By ¶ 2 of this section it was made the duty of the revising commissioners "To revise the law generally, by rejecting all unnecessary, inharmonious, obsolete or otherwise objectionable enactments, and re-

porting them in proper bill form for the purpose of repeal to the Fourth Session of the Legislative Assembly, and adopting only those statutes or parts of statutes, in distinct sections, which do not require change, and *by preparing anew and embodying in connection therewith,* upon any particular subject wherein it may be found necessary, *such other provisions as may be required to* avoid uncertainty and *harmonize and complete the law according to its true intent;* . . ." Whether or not the commissioners were in fact authorized to make the change in question here is of little importance for, as said by this court in the case of Re Hendricks, 5 N. D. 114, at page 124, 64 N. W. 110: "It is well known that the 4th general assembly, largely at the instance of the revising commission, and by means of bills prepared by them, made radical and sweeping changes in our system of laws. Old provisions, old methods, and old procedure have been swept away, and new substituted therefor. It does not answer this position to say that the act of 1893 did not contemplate any such radical action by the revising commission. That commission received its authority from the legislature, and, so far as its work has been accepted and enacted into law, its acts have been ratified by the same power from which it received its original authority, and hence, for practical purposes, power to perform those acts must be read into the original act." The political Code has been held to have been validly enacted as against the contention that it embraced more than one subject in violation of § 61 of article 2 of the Constitution. Tribune Printing & Binding Co. v. Barnes, 7 N. D. 591, 75 N. W. 904.

We, then, have before us for construction § 1717 of the Revised Codes of 1895, or § 2977 of the Compiled Laws of 1913, and not the acts of 1883 and 1887. These former acts are repealed, to use the language of Dewey, J., in Bartlet v. King, 12 Mass. 545, 7 Am. Dec. 99, quoted in Lewis's Sutherland Statutory Construction, vol. 1, 2d Ed. page 515: "A subsequent statute revising the whole subject-matter of a former one, and evidently intended as a substitute for it, although it contains no express words to that effect, must on principles of law, as well as in reason and common sense, operate to repeal the former." Continuing, in § 269, the author says: "The reasonable inference from a revision is that the legislature cannot be supposed to have intended that there should be two distinct enact-

ments embracing the same subject matter in force at the same time, and that the new statute, being the most recent expression of the legislative will, must be deemed a substitute for previous enactments, and only one which is to be regarded as having the force of law." This is not to say that the original statutes may not be resorted to if language used in the revision gives rise to a substantial doubt as to the legislative intention. See § 271.

Is an apartment or flat building required to be equipped with fire escapes under the following designation (Comp. Laws 1913, § 2977) "all hotels, factories, public halls, offices and other buildings . . . over two stories in height, . . ." ? The appellants argue that it is not, since, applying the principle of ejusdem generis, other buildings can only refer to other buildings similar to those previously enumerated.

It may reasonably be contended that the term "all hotels" includes apartment hotels and that an apartment building is in its use and occupancy by humans sufficiently similar to such hotels as to be within the statute, even applying the principle of ejusdem generis. But we are of the opinion that the legislative intention is so readily deducible from the act in question and that the building occupied by the plaintiffs was so clearly within the statute that we need not resort to ejusdem generis or any other principle of statutory construction in order to ascertain intention. This doctrine is not one, as is sometimes mistakenly supposed, to be resorted to in every case where in a statute a general expression follows a particular enumeration. It is, to quote Mitchell, J., in Willis v. Mabon (Willis v. St. Paul Sanitation Co.) 48 Minn. 140, 156, 16 L.R.A. 281, 31 Am. St. Rep. 626, 50 N. W. 1114, "but a rule of construction to aid in ascertaining the meaning of the legislature, and does not warrant a court in confining the operation of a statute within narrower limits than intended by the law-makers." Like other canons of construction, it is but a mere servant of the courts in aiding them to ascertain the legislative intention and when the intention of the legislature clearly appears it is to be given effect even if it seems contrary to some rule of construction. See Winters v. Duluth, 82 Minn. 127, 84 N. W. 788. See also Board of Education v. Stotlar, 95 Ill. App. 250; Gillock v. Peo-

ple, 171 Ill. 307, 49 N. E. 712; St. Joseph v. Elliott, 47 Mo. App. 418.

The buildings enumerated in the statute in question have at least one feature in common. They are buildings that are apt to house at a given time a considerable number of human beings. The occupants may be dwelling therein permanently or as transients. They may be assembled in meeting or working in groups, or each may be engaged in his individual occupation, whether as laborer, clerk or in some other capacity. The intention of the legislature to provide protection for people thus present in a building more than two stories in height, where the building is subjected to a use that contemplates the presence of numbers of persons in the upper stories, is, in our opinion, so clear as not to require resort to any canon of construction.

It is next argued that § 2977 of the Compiled Laws of 1913 is not applicable to the building in question for the reason that the legislature had by later enactment authorized the city of Fargo to pass an ordinance on the subject, which ordinance when passed had become exclusive. The delegation is contained in ¶ 39 of § 3818, Compiled Laws of 1913, which reads as follows: "The board of city commissioners shall have power: . . . (39) To prescribe the thickness, strength and manner of constructing stone, brick and other buildings and for the construction of fire escapes therein, and to provide for the inspection of all buildings within the city limits." See also ¶ 46 of § 3599, Comp. Laws 1913. Inasmuch as it is contended that the defendants have in all ways complied with the city ordinance and no argument is made that they have complied with the state law, if the state law is applicable, it must be assumed that the ordinance is in such form as to admit of fire escape construction which would be inadequate gauged by the requirements of the general act. Hence, unless the appellants establish compliance with a city ordinance enacted under an exclusive grant of power to regulate the subject embraced regardless of the general law, their contention must fail.

Section 3799, Compiled Laws of 1913, respecting ordinances passed by the board of city commissioners, says: "The board of city commissioners of such city shall be vested with the power and charged with the duty of making all laws or ordinances *not inconsistent with the constitution* and *laws of this state,* touching every object, matter and

subject within the local government instituted by this chapter . . ."
—, a clear statement of intention that the ordinances adopted should
not be inconsistent with the laws of the state touching any matter or
subject that was committed to the commissioners for local legislation.
In light of this section alone it would require a highly strained con-
struction of paragraph 39 to find in it an intention on the part of the
legislature that the inhabitants of any city might enjoy a lesser meas-
ure of protection from the hazard of fire than that prescribed by the
general law, if the city commissioners were content to prescribe a
less adequate protection by ordinance. Even without such a section
as § 3799, the intention that municipal corporations by ordinance
may supersede a state law will not ordinarily be inferred from a gen-
eral grant of power. See 43 C. J. 221. We are clearly of the opinion
that the power of the city commissioners to pass the ordinance (Comp.
Laws 1913, ¶ 39, § 3818,) is not exclusive in the sense contended for
and, not being exclusive, both the general law (§ 2977) and the city
ordinance may stand. Since the ordinance admits of a measure of
compliance that does not satisfy the state law, it must be that it is
silent where the state law speaks and in such case there is no con-
flict and both may stand. 43 C. J. 219. This does not mean that
any requirements with respect to the character of construction, et
cetera, which may be contained in the ordinance, thus rendering it
more specific than the state law, would be invalid.

It is also argued that § 2977 is complied with if iron ladders be
placed at points immediately adjacent to the windows. There is no
merit in this contention. "Immediately adjacent," within this stat-
ute, certainly cannot be held to mean from a window eighteen feet
distant from the window of a room between which and the window
equipped with a fire escape no reasonably convenient avenue for es-
cape is afforded.

The orders appealed from are affirmed.

BURKE, Ch. J., and CHRISTIANSON, BURR, and NUESSLE, JJ., con-
cur.