COUNTY OF WASHINGTON *v.* BENJAMIN GATES, AUDITOR OF ACCOUNTS, ET AL.

January Term, 1936.

Present: POWERS, C. J., SLACK, MOULTON, THOMPSON, and SHERBURNE, JJ.

Opinion filed February 16, 1936.

*Webster E. Miller* for the petitioner.

*Lawrence C. Jones,* Attorney General, for the petitionees.

SLACK, J. This is a petition for mandamus brought by the assistant judges of Washington county court to compel the auditor of accounts forthwith to issue a warrant to the order of the City of Montpelier for the sum of thirty-five dollars in payment of water furnished by it to the Washington county jail for the six months ending October 1, 1935, and to compel the State treasurer to pay such warrant.

■■ Whether the petition should be granted depends upon the legality and effect of that part of P. L. 9066 which reads as follows: "The purchasing agent shall * * * purchase the fuel, water, lights, bedding and clothing for the several jails." Prior to the 1933 revision of the statutes, each county provided water for its jail, at its own expense. The defendants contend that this change was made by the commission created in 1931 to revise the statutes without "legislative authorization," and if not that, it is a mere "enabling act" that requires the purchasing agent, upon requisition of the assistant judges, to purchase water for the several jails at the expense of the county wherein such jail is located. The first claim is untenable. Section 4 of No. 172, Acts of 1931, the act which created the commission to revise the statutory law of the State, provided, that such commission should propose to the General Assembly such additions, repeals or amendments to the then existing statutes as it might deem proper and expedient. The commission prepared a complete and comprehensive revision of the entire statuory law of the State which it submitted to the General Assembly of 1933 in the form of a "Proposed Revision" of the Public Laws of Vermont. Section 8703 thereof contained the precise language found in P. L. 9066. With such proposed revision, the commission submitted a report of its doings in preparing the same, wherein it called attention to the fact that chapter 349, of which section 8703 was part, had been rewritten and rearranged, and that "The amendments have been written in and the section shortened." It is thus apparent that the commission acted well within its authority. But assuming that it were otherwise, the defendants would be no better off, since the proposed revision was presented to the General Assembly of 1933 in the form of a duly prepared bill, House Bill No. 1, and such proceedings were had thereon that the proposed laws, embodied therein, together with certain amendments not here material, became, and are the statutory law of this State, No. 157, Acts of 1933, and now constitute Public Laws of Vermont, 1933. The vital question is not what the commission had authority to do, but what the Legislature intended to do with the commission's work, and such intention can only be gathered from what the Legislature itself declared when it finally passed upon the work submitted to it by the commission. *Central of Georgia*

*Railway Co.* v. *State*, 104 Ga. 831, 31 S. E. 531, 42 L. R. A. 518;
*Gibson* v. *State*, 214 Ala. 38, 106 So. 231; *State ex rel.* v. *Davis*, 116 Kan. 211, 225 Pac. 1064; *Klingensmith* v. *Siegal*, 57 N. D. 768, 224 N. W. 680; *In re Donnellan*, 49 Wash. 460, 95 Pac. 1025.

■ ■ Neither do we find support for the claim that this change was intended, simply, to authorize the purchasing agent to purchase water at the expense of the county. The State has long paid for heating the several jails (No. 155, Acts of 1884), and for lighting them (No. 129, Acts of 1902); it has furnished bedding and clothing for them since 1917 (P. L. 7275) and has furnished fuel, *water* and lights for the several court houses since 1912 (No. 253, Acts of 1912). It thus appears that the change under consideration is in line with the well-settled policy of the State to pay certain expenses incident to the maintenance of the court houses and jails, and we think it apparent that the Legislature intended *water* for the jails to stand in all respects like the other items enumerated in P. L. 9066. Nor is this conclusion affected by the fact that water is not mentioned in P. L. 3345. It is said in *Old Saybrook* v. *Public Utilities Commission*, 100 Conn. 322, 124 Atl. 33, 35: "The fundamental rule for the construction of statutes is to ascertain the intent of the Legislature. This intent must be ascertained from the act itself, if the language is plain. But when the language used is doubtful in meaning, the true meaning may be ascertained by considering it in the light of all of its provisions, the object to be accomplished by its passage, its title, pre-existing legislation on the same subject, and other relevant circumstances. A statute is to be so construed as to carry out the intent of the Legislature, though such construction may seem contrary to the letter of the statute. When the provisions of a law are inconsistent, effect must be given to those which harmonize with the context and the apparent intent of the Legislature." See, too, *Anderson* v. *Souliere*, 103 Vt. 10, 151 Atl. 509. When we consider the object to be accomplished by the passage of Section 9066, the pre-existing legislation on the same subject, that is, the State's policy toward other expenses connected with the court houses and jails, and the context of the two sections, P. L. 3345 and 9066, the intent of the Legislature is not open to doubt. It is not necessary, therefore, to resort to the rule of construction in-

voked when all other rules fail, namely, that where several clauses or sections of a statute present, as compared with each other, an irreconcilable conflict, the last in order of date or local position must prevail. End. on Int. of Statutes, par. 183; *Howard* v. *Railroad Co.*, 86 Me. 387, 29 Atl. 1101; *State* v. *Burchfield Bros.*, 211 Ala. 30, 99 So. 198; *United States* v. *Updike et al.* (D. C.), 25 Fed. (2d) 746. No question is made regarding the amount of the claim involved.

*Judgment that a mandamus issue directed to the said Benjamin Gates, as Auditor of Accounts, commanding him to allow the claim described in the petition at the sum of thirty-five dollars, and to issue his order on the State Treasurer for that amount, payable to the order of the City of Montpelier, and deliver the same to said city on demand; and that a mandamus issue directed to the said Thomas H. Cave, as State Treasurer, commanding him to pay such order upon presentation of the same to him.*