## Ex parte HALEY.

No. 33297. Oct. 11, 1949.

*210 P. 2d 653.*

Frank Hickman, of Tulsa, for petitioner.

Mac Q. Williamson, Atty. Gen., and Sam H. Lattimore, Asst. Atty. Gen., for respondent.

LUTTRELL, J. This is an original petition filed in this court by E. J. Haley for writ of habeas corpus. We assumed jurisdiction for the reason that the present existence of the court of common pleas of Tulsa county, a court of civil as well as criminal jurisdiction, was involved.

Petitioner alleges that he is illegally restrained of his liberty by the sheriff of Tulsa county, Oklahoma, and confined in the county jail under commitment issued out of the court of common pleas of said county under arraignment on an information charging him with the operation of a bookmaking establishment for the purpose of receiving and reporting bets on horse racing contrary to the provisions of 21 O. S. 1941 §991. It is alleged that his arrest on such charge and commitment thereunder is illegal for the reason that section 991, supra, was not then in force as the law of the state.

The above section was first enacted by the Legislature in 1913. At the same session the Legislature enacted another and independent act relating to gambling.

Pursuant to petitions calling for a referendum on both these acts, such acts were submitted to the people on an election held on August 4, 1914, for adoption or rejection, at which election both acts were adopted.

This court, in the case of Ex parte Smith, 49 Okla. 716, 154 P. 521, held the election invalid so far as it related to the general gambling act because of failure to print and circulate a sufficient number of pamphlets containing the act and arguments relating thereto. The general gambling statute was re-enacted by the Legislature in 1916.

It is further asserted and alleged by petitioner that the facts concerning the election and upon which this court based its decision in the case of Ex parte Smith, supra, were the same with ing section 991, supra. Petitioner in support of such allegation in his brief tenders in evidence the records and files in that case and also asserts that this court will take judicial knowledge of such fact. Since the respondent makes reference to the act here involved, be-no serious denial of such allegation, we shall, for the purpose of this case, accept such allegation as having been established and hold that the referendum election on the act here involved was invalid, and that section 991, supra, was not in force at the time the petitioner was arrested and the commitment issued, unless such section has been re-enacted by the act of the Legislature adopting the 1941 Code as the law of the state.

The respondent contends that regardless of the invalidity of the referendum election, section 991 was re-enacted upon the adoption of the 1941 Code, and is now in force and effect as the law of the state and was so in force at the time petitioner was committed. In support of such contention he cites the case of Atlas Life Insurance Co. v. Rose, 196 Okla. 592, 166 P. 2d 1011. In that case, in speaking of the penal provisions of section 4, 31 O. S. 1941, we said:

"The penal provision of this section was first adopted by the Legislature in 1915. It was adopted as an amendment to the 1910 law. This act, insofar as it related to the penal provision, was later held unconstitutional by this court because of defective title. Gilmer v. Hunt, 167 Okla. 175, 29 P. 2d 59. The provision, however, was re-enacted by the Legislature in 1943 when it adopted the Statutes of Oklahoma, 1941, as the law of the state and such provision is now in full force and effect."

Petitioner contends that the conclusion reached in that case is erroneous, and in effect urges that the case to this extent should be overruled. This challenge impels us to re-examine the rule there announced.

The Legislature in 1941 passed a law authorizing compilation of the statutes of the state, Title 75, ch. 4, S. L. 1941. Section 1 of that Act, 75 O.S. 1941 §101, authorized and directed West Publishing Company to compile, codify and annotate the Oklahoma Statutes 1941.

Section 2, 75 O.S. 1941 §102, provides that, among other things, said statutes shall contain:

". . . all laws of the State of Oklahoma of a general and permanent nature now in force, including all laws and amendments of a general and permanent nature passed by the Regular Session of the Eighteenth Legislature, 1941, with all repealed laws and those held unconstitutional by the highest courts eliminated."

Section 8, 75 O.S. 1941 §108, provides:

"The Oklahoma Statutes, 1941, prepared by West Publishing Company, and in one (1) volume as above provided for, after the same shall have been approved by the Justices of the Supreme Court of the State of Oklahoma as hereinabove provided, shall as provided in Section 9, be, and are hereby adopted as the general and public laws of the State of Oklahoma and the official Statutes of the State of Oklahoma, *as to all laws therein contained . . .*"

Under authority of the above sections the statutes were compiled by West

Publishing Company. Upon the completion of such compilation the Code as so compiled was approved by the Justices of the Supreme Court in December, 1941.

On the 12th day of April, 1943, the Legislature adopted the Code as compiled and approved by the Justices of the Supreme Court as the law of the state by the following adopting act which in so far as here material provides (Title 75, ch. 4, S. L. 1943 §1):

"That the Oklahoma Statutes, 1941, compiled, codified and annotated and indexed under and by the provisions of House Bill No. 519 of the Eighteenth Legislature of the State of Oklahoma, approved May 9, 1941, Session Laws of 1941, pages 457 to 460, inclusive, and compiled, codified and annotated under and by the supervision of the Justices of the Supreme Court of the State of Oklahoma and approved by them on December 31, 1941, and promulgated and published by C. C. Childers, Secretary of State, under proclamation dated the 27th day of January, 1942; said Oklahoma Statutes, 1941, being further identified as one volume, containing pages 1 to 3589, inclusive, be and the same is hereby adopted and made of force as the Code and Revised Statutes of the State of Oklahoma to be known as 'Oklahoma Statutes 1941', and that all general laws of the State of Oklahoma not therein contained be and the same are hereby repealed."

We think it quite clear that upon the passage of the above act adopting the 1941 Code, and making the same of force as the Code and Revised Statutes of the state, such Code and all the laws therein contained thereafter became the law of the state, including section 991, supra, although such section may not have been in force and effect prior thereto. We, in effect, so held in the Altas case, supra, and we see no reason for departing from the rule there announced. Courts from other states under a substantially similar state of facts have arrived at the same conclusion.

In the case of Berg v. Berg, 139 Neb. 99, 296 N.W. 460, it appears that the Nebraska Legislature, in the year 1911, passed an act creating a Code Commission and authorized such Commission to assemble and codify the statutes of the state with specific directions to eliminate all statutes theretofore repealed. A section of the statute which had previously been repealed was inserted in the Code by the Code Commission. The Code as prepared and compiled was thereafter adopted by the Legislature as the law of the state. The court held that notwithstanding such repealed section was inserted in the Code contrary to the provisions of the act creating the Commission and authorizing the compilation, upon the adoption of the Code as the law of the state, which repealed section was thereby re-enacted and thereafter in force as a law of the state. The court there said:

"Though the report included matter the commissioners were not specifically authorized to include, the formal adoption and approval of the report of the commissioners, embodying section 8177, by the legislative enactment of chapter 3, Laws 1913, was as much an expression of legislative will, as what it should contain, as was the expression in the Act of 1911, and a later expression thereof. Leggett v. Wardenburg 53 Ariz. 105, 85 P. 2d 989; State v. Davis, 116 Kan. 211, 225 P. 1064; State v. Davis, 116 Kan. 663, 229 P. 757; Chumbley v. People's Bank & Trust Co., 166 Tenn. 35, 60 S. W. 2nd 164. 'The vital question is not what the commission had authority to do, but what the Legislature intended to do with the commission's work, and such intention can only be gathered from what the Legislature itself declared when it finally passed upon the work submitted to it by the Commission.' County of Washington v. Gates, 108 Vt. 117, 183 A. 506, 507. The fact that the section in question may have been inserted by the commissioners in their report without specific authority is not material. The approval and adoption of their report by the Legislature with such section included therein made such section the law."

The Supreme Court of Georgia, under a similar state of facts, reached the

same conclusion in the case of Central of Georgia Ry. Co. v. State, 104 Ga. 831, 31 S. E. 531, wherein the court said:

"The vital question, then, in this case, is not what the commissioners had the power to do, but what the Legislature intended to do with their work. That intention can only be gathered from what the Legislature itself had deliberately declared when it finally passed upon the work reported to it by the commissioners. This final action of the Legislature is embodied in what is known as the 'Adopting Act' of the Code, approved December 16, 1895. Section 1 of that act declares: 'That the code of laws prepared under its authority by John L. Hopkins, Clifford Anderson, and Joseph R. Lamar, and revised, fully examined and identified by the certificate of its joint committee, and recommended and reported for adoption, and with the acts passed by the general assembly of 1895 added thereto by the codifiers, be, and the same is hereby adopted and made of force as the Code of Georgia.' . . . It would be difficult to conceive how language could more clearly or forcibly express the real intent of the Legislature in this matter than the words used in the title and the body of this act. If it means anything, it means a purpose of the Legislature to adopt and make of force a code of laws, and hence to breathe into every provision in that code the vitality of the legislative enactment."

What is there said by the Supreme Court of Georgia relative to its adoption act applies with equal force to the Oklahoma Adoption Act of 1943.

Petitioner asserts that the rule contended for the state and as announced in the Atlas case above would be correct if the West Publishing Company had been authorized to revise the statutes, but that since it was only authorized to compile, codify and annotate such statute, such rule is not applicable. We do not regard this distinction as controlling. The general rule is that where by legislative enactment a Code Commission is created and such commission is authorized and empowered to compile and codify statutes of the state then in force, and the Legislature thereafter adopts the Code so compiled and prepared by the commission as the law of the state, such Code and all laws therein contained thereafter become the law of the state, although the commission may have inserted therein sections containing new matter, or sections theretofore repealed, contrary to the provisions of the act creating the commission and authorizing the compilation. In such circumstances the question as to whether the commission was originally authorized to revise or merely to compile and codify the statutes of the state is of no importance. County of Washington v. Gates, 108 Vt. 117, 183 A. 506; Klingensmith v. Siegal, 57 N. D. 768, 224 N.W. 680.

Petitioner cites no authority to the contrary. In all of the cases cited by him, the court in the opinion specifically points out that the Code as prepared and compiled by the Code Commission, or compiler, had not at any time or by any specific act of the Legislature been adopted as the law of the state. This statement applies to the case of State ex rel. Urton v. American Bank & Trust Co., 75 Mont. 369, 243 P. 1093, the main case relied upon by petitioner, and also the cases of Jamison v. Admiralty Zinc Co., 186 Okla. 13, 96 P. 2d 26; State for Use and Benefit of Murphy v. American Surety Co. of N.Y., 180 Okla. 565, 71 P. 2d 745, cited by him.

Moreover, section 8, 1941 S. L., supra, 75 O. S. 1941, section 108, specifically provides that the Oklahoma Statutes 1941 prepared by West Publishing Company when approved by the Justices of the Supreme Court *are hereby adopted as the general and public laws of the State of Oklahoma as to all laws therein contained.*

The contention of petitioner that the section here in controversy was not re-enacted upon the adoption of the 1941 Code by the Legislature as the law of the state cannot be sustained.

Petitioner in his petition further alleged that the Act of 1913, the bookmaking statute here involved, was suspended upon the filing of the referendum petition; that since the election held thereon was invalid, it will remain suspended until another election is held on such petition, and that since no such election has ever been held, such statute still remains suspended, and the Legislature was without authority to re-enact the same. In support thereof he cites and relies upon that part of section 3, art. 5, of the State Constitution which provides:

"Any measure referred to the people by the referendum shall take effect and be in force when it shall have been approved by a majority of the votes cast thereon and not otherwise."

This provision of the Constitution is not subject to such construction. Under this contention of petitioner it would follow that where a measure is once submitted to the people under the referendum provision of the Constitution, and such measure, at such election, for any reason fails of adoption, the Legislature would be thereafter forever precluded from re-enacting such measure. Such construction would do violence to section 7, art. 5, of the State Constitution, which provides:

"The reservation of the powers of the initiative and referendum in this article shall not deprive the Legislature of the right to repeal any law, propose or pass any measure, which may be consistent with the Constitution of the State and the Constitution of the United States."

These two sections should be construed together, and when so construed the conclusion necessarily follows that when the 1913 bookmaking act, the act here in controversy, was submitted to the people, and by reason of the invalidity of the election failed of adoption, the referendum petition had spent its force and the Legislature was then at liberty to re-enact the measure. While this court has never directly passed on this question, the Criminal Court of Appeals of the state, in the

case of Leach v. State, 17 Okla. Cr. 322, 188 P. 118, so held.

In that case the general gambling act heretofore discussed in this opinion was involved. After the referendum election on that act was held invalid, the Legislature, in 1916, re-enacted the measure with the emergency attached. The defendant in that case was prosecuted and convicted for the violations of the provisions of such act. On appeal defendant contended that the Legislature was without authority to re-enact the measure; that it was still pending under the referendum. The same argument was there made as here. The court held to the contrary and sustained the conviction. In that case the court, after reviewing and construing various provisions of the State Constitution pertinent to the issues and after referring to that part of section 3, art. 5, of the Constitution, which fixes the time in which elections shall be held under measures submitted to the people, further said:

"The provisions of section 3 of article 5 of the Constitution of this state, heretofore quoted, with reference to holding elections on referred measures, in our opinion form the basis for determining the period of time in which the Legislature is without authority to repeal or re-enact a measure regularly before the people for approval or rejection, which period is necessarily from the date of filing a valid petition for reference to the date the referendum vote is had. This indeed is the most liberal view for the appellant that could be taken of our constitutional provisions. Otherwise, the Governor, by failing or refusing to submit the question at the next general election, could work a fraud upon the people and the Legislature (1) by depriving the people of an opportunity to approve or reject the law; (2) by forever depriving the Legislature of the right to subsequently enact appropriate legislation on the same subject.

". . . After the date at which an election is held on a referred measure, although such election be held to be invalid, a subsequent Legislature was authorized to consider the act referred as having been rejected, and to propose

and pass appropriate legislation upon the same subject, . . ."

We think the rule announced in the above case sound, and in harmony therewith we hold that the Legislature had authority to re-enact the law in question and that it was so re-enacted when the Legislature adopted the 1941 Statutes as the law of the state, and that such law was in full force and effect at the time of petitioner's arrest and commitment.

Petitioner in his petition alleges and here asserts that his restraint is also illegal for the reason that the court of common pleas of Tulsa county had ceased to exist, and was not in existence at the time the commitment herein was issued.

In the year 1923, ch. 51, S. L. 1923, the Legislature established a court of common pleas in all counties of the state having a city therein with a population of more than 72,000 and less than 90,000 people as shown by the last preceding decennial Federal Census. The act further provided for judges and officers of the court created by the act, fixed salaries for the officers and jurisdiction of the court and provided the procedure. Under the provisions of this act Tulsa county was entitled to a court of common pleas, and such court was duly established in that county. The act of 1923 was several times thereafter amended in so far as it pertained to jurisdictional and procedural matter. It was last amended in 1937, ch. 21, art. 5, S. L. 1937, and section 1 of said act as finally amended now appears in the 1941 Statutes (20 O.S. 1941 §651). Each time section 1 of the 1923 act was amended it contained in the act, and which was carried forward in the amendatory act, the exact language as contained in section 1 of the original act authorizing the establishment of courts of common pleas.

The Federal Census taken in 1930 showed that the city of Tulsa had increased in population and then had acquired a population of more than 90,-000 people, a population in excess of the brackets fixed by the Legislature in passing the act.

It is now argued by petitioner that when the Federal Census showed that the city of Tulsa had acquired a population in excess of 90,000 people, the court of common pleas of that county automatically ceased to exist, and that the court was therefore without jurisdiction to issue the commitment. We do not agree.

There is nothing contained in the act indicating that it was the intention of the Legislature at the time the act was passed and the court of common pleas of Tulsa county was established, that such court should cease to exist upon a city located in the county acquiring a population in excess of the limit fixed by the act. If the Legislature had so intended it could have said so in plain, explicit, and concise language. Since there is nothing contained in the act to the contrary, we must presume that it was the intention of the Legislature that a court once established under such act should continued to exist until thereafter terminated by proper legislative act.

It is further contended by petitioner that section 651, of title 20, Okla. Stat. 1941, provides for the creation of courts of common pleas in counties with cities of between 72,000 and 90,000 population according to the last decennial Federal Census; that such section was contained in the 1941 Code at the time it was adopted by the Legislature; that the adoption of this section in the Code constituted the adoption of a new and independent law and thereby created a common pleas court in all counties having a city of such population; that the county of Tulsa did not then contain a city with such population and was therefore excluded from the act. This contention cannot be sustained. The carrying forward in the 1941 Code of section 651 establishing courts of common pleas simply continued in force the original act as amended. It did not constitute, upon the adoption of the code, a new and independent act

creating a new and independent court. Hines v. Harmon, 178 Okla. 1, 61 P. 2d 641.

Writ discharged, and petitioner remanded to custody of sheriff.